**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_________________

| | | |
|---|---|---|
| **United States of America,** Plaintiff, | ) | No. **CR 14-0184-PHX-NVW** |
| vs. | ) | Phoenix, Arizona<br>June 11, 2014<br>3:32 p.m. |
| **Gordon Leroy Hall (1),**<br>**Benton Tyler Thomas Hall (3),** Defendants. | ) | |

**BEFORE: THE HONORABLE NEIL V. WAKE, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**(*Faretta Hearing*)**

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**APPEARANCES:**

For the Plaintiff:

U.S. ATTORNEY'S OFFICE
By: **Lisa Jennis, Esq.**
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004

For the Defendant Gordon Leroy Hall

GORDON LEROY HALL
**Pro Se**

For the Defendant Benton Tyler Thomas Hall:
BENTON TYLER THOMAS HALL
**Pro Se**

Standby Counsel for Benton Tyler Hall:
KESSLER LAW OFFICES
By: **Eric W. Kessler, Esq.**
240 N. Center Street
Mesa, AZ 85201

15:32:21

P R O C E E D I N G S

THE COURTROOM DEPUTY: This is Criminal Case 2014-184, United States of America versus Gordon Leroy Hall and Benton Tyler Thomas Hall. This is the time set for a *Faretta* hearing.

Counsel, please announce for the record. 15:33:07

MS. JENNIS: Good afternoon, Your Honor. Lisa Jennis for the United States.

THE DEFENDANT BENTON HALL: Good afternoon, Your Honor. Benton Tyler Thomas Hall here.

MR. KESSLER: Good afternoon, Judge. Eric Kessler. I 15:33:21 am advisory or standby counsel for Mr. Hall.

THE COURT: Which Mr. Hall?

MR. KESSLER: I'm sorry. Thomas Hall. Benton Hall.

THE COURT: All right.

And you are Gordon Hall. 15:33:44

THE DEFENDANT GORDON HALL: Good afternoon, Your Honor. I am here today as beneficiary of the trust for settlement.

THE COURT: I'm just stating names right now. What is your name again, sir? 15:33:53

THE DEFENDANT BENTON HALL: Your Honor, Benton Tyler Thomas Hall.

THE COURT: And Mr. Kessler is your advisory counsel?

THE DEFENDANT BENTON HALL: Correct.

THE COURT: And your name again, sir? 15:34:02

THE DEFENDANT GORDON HALL: Beneficiary of the trust for settlement in this matter, Your Honor.

THE COURT: Sir, please state your legal name. You can say other things later right now. State your legal name and nothing else. 15:34:18

THE DEFENDANT GORDON HALL: Beneficiary Gordon Hall.

THE COURT: This may be a short proceeding.

Sir, that is not your legal name. The case proceeding is against Gordon Leroy Hall. Are you Gordon Leroy Hall?

THE DEFENDANT GORDON HALL: I am here today as beneficiary of the trust for settlement. 15:34:36

THE COURT: I think I have, right here, basis to deny the request of that man there in the orange uniform to represent himself if he will not participate in this proceeding to determine whether he's capable to do so. And -- 15:34:51

THE DEFENDANT GORDON HALL: Did you receive the --

THE COURT: Sir, you are not allowed to speak unless I invite it. And you will be given every opportunity to say anything appropriate but you are not allowed to interrupt. But if you do interrupt, there will be consequences. So please hold your piece until I invite you to speak. 15:35:08

Mr. Kessler, I understand you have a scheduling problem?

MR. KESSLER: I have an issue that's pressing. I have a jury that has just returned a verdict in state court and they 15:35:19

are literally waiting for me.

THE COURT: Okay. How would you like to proceed, Mr. Kessler? Would you like to continue this?

MR. KESSLER: No. If you could conduct a *Faretta* hearing as to my client first and then excuse us. 15:35:33

THE COURT: All right then. I will proceed in that fashion.

All right. Mr. Benton Tyler Thomas Hall, we're here because you have requested to represent yourself, that is, to proceed without an attorney in this case. Is that correct? 15:35:49

THE DEFENDANT BENTON HALL: It is, Your Honor.

THE COURT: Now, it is my obligation to ask you a series of questions to make a determination whether you are able to do so. But first I want to ask you directly again, do you wish to proceed in this case, including trial, without a 15:36:07 lawyer? Is that your wish?

THE DEFENDANT BENTON HALL: It is, Your Honor.

THE COURT: Okay. And I have a variety of questions I need to ask to explore that.

First, would you please tell me, again, what is your 15:36:27 age?

THE DEFENDANT BENTON HALL: 22, Your Honor.

THE COURT: And what is the extent of the education you have had?

THE DEFENDANT BENTON HALL: High school graduate. 15:36:41

THE COURT: All right. And I take it then you have never studied law. Is that correct?

THE DEFENDANT BENTON HALL: That is correct, Your Honor.

THE COURT: Have you ever represented yourself in a criminal case? 15:36:49

THE DEFENDANT BENTON HALL: At one point I have, yes.

THE COURT: And what case was that?

THE DEFENDANT BENTON HALL: There was a case out in South Carolina where for a period of time I was representing 15:36:58 myself pro se with standby counsel.

THE COURT: Bend that up. You can pull it forward. Try to speak a little more loudly so the microphone will pick you up. All right?

THE DEFENDANT BENTON HALL: I have also had a state 15:37:19 case that I represented myself.

THE COURT: The case in North Carolina, is that the case in the United States District Court for the District of South Carolina, Greenville Division, Case Number 13-CR-170? Is that the case? 15:37:39

THE DEFENDANT BENTON HALL: That is correct, Your Honor.

THE COURT: And that's the case before the Judge Michelle Childs?

THE DEFENDANT BENTON HALL: That is correct. 15:37:47

THE COURT: And did you end up having a lawyer eventually?

THE DEFENDANT BENTON HALL: I did.

THE COURT: And I have a transcript of a proceeding at which Judge Childs made a determination that you were not able to represent yourself. Correct? 15:37:59

THE DEFENDANT BENTON HALL: Well, Your Honor, that was a -- yes. That is correct.

THE COURT: And so I take it that after that, a lawyer did represent you. Is that correct? 15:38:14

THE DEFENDANT BENTON HALL: Correct.

THE COURT: And you are under sentence for that case?

THE DEFENDANT BENTON HALL: That is correct.

THE COURT: And again, tell me again, what was your sentence? 15:38:24

THE DEFENDANT BENTON HALL: 24 months.

THE COURT: All right. Now, you said there was another case in state court that you represented yourself?

THE DEFENDANT BENTON HALL: There was a state case, yes. 15:38:36

THE COURT: And could you tell me about that case, when it was and what it was about?

THE DEFENDANT BENTON HALL: That was a case back in 2013, I believe, and it had to do with -- can't quite recall if charges. They were -- one of them was fighting and loud 15:38:51

disturbance.

THE COURT: Was that -- do you know if that was a felony or a misdemeanor?

THE DEFENDANT BENTON HALL: I believe it was a misdemeanor. The State dropped all the charges. 15:39:05

THE COURT: Okay. Were there any -- now, what court was that in?

THE DEFENDANT BENTON HALL: That was in the Scottsdale City Court.

THE COURT: Well, there's really no constitutional 15:39:20 right to appointed counsel for that. Well, it depends what the sentence would have been. Do you know what the maximum sentence would have been if you had been found guilty?

THE DEFENDANT BENTON HALL: I believe it could have been anywhere from six months and forward. 15:39:35

THE COURT: Actually, in city court that couldn't exceed 12 months.

MR. KESSLER: I believe, Your Honor, that the maximum was six months.

THE COURT: So there -- Mr. Kessler, there would have 15:39:48 been no occasion have to the ability to represent himself in that case, correct?

MR. KESSLER: That's correct, Judge.

THE COURT: All right. Now, Nick, would you give me the indictment, print the indictment for me? 15:40:02

MS. JENNIS: I have a copy, Your Honor.

THE COURT: I just want to inform him, make sure he understands all the charges against him. We can print it right here.

All right. Mr. Hall, in the indictment in this case filed February 4 of this year, there are certain charges against you. I want to go through all of them and make sure you understand them. In Counts 1 and 2, it is alleged that, quote -- well, on January 22 and 28, 2013, quote, "with the intent to defraud, that you drew, printed, processed, produced, published, or otherwise made and attempted to cause the same, within the United States, a false or fictitious instrument, document, or other item appearing, representing, purporting, and contriving through scheme and artifice to be an actual security and financial instrument issued under the authority of the United States and specifically a money order in the amount of $886,397.60 and issue date January 24, and also a money order, same date, in the amount of $635,176.26."

Do you understand that charge against you?

THE DEFENDANT BENTON HALL: I do, Your Honor.

THE COURT: And in Counts 3 and 4, similar allegations were made against you.

I'm sorry, Ms. Jennis. What's the difference between Counts 1 and 2 and Counts 3 and 4?

MS. JENNIS: 1 is making the fictitious document, and

one is using the fictitious document.

THE COURT: All right. Counts 3 and 4 with respect to the same documents alleges, charges with using. Do you understand those charges against you?

THE DEFENDANT BENTON HALL: I do, Your Honor. 15:43:14

THE COURT: And Count 5 alleges that having been previously convicted of --

MS. JENNIS: Count 5 is just as to defendant Gordon Hall, Your Honor.

THE COURT: Oh. Indeed. Thank you. 15:43:38

And then same for the forfeiture allegations, correct?

MS. JENNIS: Yes, Your Honor.

THE COURT: And Ms. Jennis, would you advise us what are the maximum sentences for those charges against Mr. Benton Hall? 15:43:57

MS. JENNIS: Yes, Your Honor. Counts 1 through 4, the maximum sentence is 25 years. And I would also comment that they can be served consecutive to any other sentence that a defendant might be serving.

THE COURT: And what are the maximum fines? 15:44:12

MS. JENNIS: $250,000.

THE COURT: Mr. Hall, do you understand that for each of those charges, those four separate charges, you could be sentenced to 25 years in prison and a fine up to $250,000?

THE DEFENDANT BENTON HALL: I do, Your Honor. 15:44:29

THE COURT: Do you understand that for -- I have already said this, but do you understand that for each of those charges, they could be served one after the other. It could be a total of 100 years. Do you understand that?

THE DEFENDANT BENTON HALL: I do, Your Honor. 15:44:42

THE COURT: Do you understand that the advisory sentencing guidelines have an effect that the Court is required to consider, although it's not bound to follow as to what your sentences would be. Do you understand that?

THE DEFENDANT BENTON HALL: Yes, Your Honor. 15:44:59

THE COURT: Are you familiar with the Rules of Evidence?

THE DEFENDANT BENTON HALL: I am not, Your Honor.

THE COURT: Okay. Are you familiar with the Rules of Criminal Procedure? 15:45:21

THE DEFENDANT BENTON HALL: Not completely and entirely, no.

THE COURT: What familiarity do you have with them?

THE DEFENDANT BENTON HALL: I understand Rule 11 and how to go about proceeding with motions and pleadings. 15:45:36

THE COURT: What about trials? Are you familiar with criminal procedures in trials?

THE DEFENDANT BENTON HALL: I am not, Your Honor.

THE COURT: You realize that if you represent yourself that you will not be given leeway from the Rules of Evidence or 15:45:54

the Rules of Procedure from what other people would be subject to.

THE DEFENDANT BENTON HALL: I understand that, Your Honor.

THE COURT: So if you just don't know about something and you make a big mistake that makes a difference of you being found guilty or not, you don't get any relief from it because you didn't have a lawyer. You are stuck with it. Do you understand that? 15:46:04

THE DEFENDANT BENTON HALL: I do, Your Honor. 15:46:17

THE COURT: Do you understand that the Rules of Evidence can be very technical, difficult even for lawyers to understand? Do you understand that?

THE DEFENDANT BENTON HALL: I do, Your Honor.

THE COURT: You realize that if you proceed with that yourself, the Court is not required or allowed to help you out. The Court doesn't fix your mistakes for you, warn you about things you should be doing. You are choosing to be on your own and you are on your own. Do you understand that? 15:46:38

THE DEFENDANT BENTON HALL: I understand that, Your Honor. 15:47:06

THE COURT: Now, I must advise you, in fact, I have no doubt that what I'm about to advise you is entirely true, that the chances of you representing yourself and not doing harm to yourself, either being found guilty of a crime or having a 15:47:34

punishment that may be worse than you hope, the chance of you not hurting yourself are almost nothing. It is almost certain that if you represent yourself you will do things that will be harmful to your case. Do you understand that?

THE DEFENDANT BENTON HALL: I do, Your Honor. 15:47:56

THE COURT: And again, you understand that the Court will not, and will not be obligated or permitted, to basically help you out as though the Court were trying to make up for the mistakes that you are making because you do not have a lawyer. Do you understand that? 15:48:19

THE DEFENDANT BENTON HALL: I do, Your Honor.

THE COURT: Do you understand that if you have a trained lawyer, the lawyer would defend you far better than you could yourself?

THE DEFENDANT BENTON HALL: I do. 15:48:33

THE COURT: Tell me why you want to proceed without a lawyer to help you, to represent you.

THE DEFENDANT BENTON HALL: Well, Your Honor, I believe I should be standing here alone and have honorable intentions of resolving this matter peaceably between the 15:48:58 parties.

THE COURT: Who are the parties?

THE DEFENDANT BENTON HALL: The United States of America, who is represented by the government through Lisa Jennis, and defendant, who I am here today. 15:49:14

THE COURT: But explain to me how it is that by not having a lawyer you are able to resolve the matter.

THE DEFENDANT BENTON HALL: There is no difference, Your Honor. If I had an attorney they could probably do a much better job than I. However, it's a preference of mine that I 15:49:35
would like to stand here before you.

THE COURT: Do you want to be found guilty?

THE DEFENDANT BENTON HALL: Well, Your Honor, if I was intending to go to trial, then no, I would not want to be found guilty. 15:49:57

THE COURT: Are you intending to go to trial.

THE DEFENDANT BENTON HALL: I am not.

THE COURT: Well, I have to be careful here because on the one hand, I'm required to ask probing questions to determine whether you are able to represent yourself. On the 15:50:12
other hand, I am not allowed to get involved in any discussions or negotiations between you and the government as to whether you might have some resolution of this case.

So don't take anything I say as making any suggestion about what you should or should not do in terms of agreeing to 15:50:32
anything with the government.

Do you understand?

THE DEFENDANT BENTON HALL: I do, Your Honor.

THE COURT: So if what you want to do is get some resolution without a trial, tell me why you want to do that 15:50:50

without a lawyer.

THE DEFENDANT BENTON HALL: It's -- I don't know how to explain it other than it's just merely a preference, Your Honor.

THE COURT: Well, I have to determine whether you are making this decision knowingly, that means you know exactly what you are doing, what the consequences are, and intelligently. And that's why I'm asking you these questions. So if you cannot give me any reason, then that causes me great concern as to what your reason is. You just want to do it even though you can't think of any reason for it. Correct? Is that what it boils down to? 15:51:05 15:51:23

THE DEFENDANT BENTON HALL: Well, Your Honor, if a defendant is represented by an attorney, isn't it true that they only have so much they can say and speak in the Court? 15:51:43

THE COURT: That's true. But the lawyer generally speaks. Now, as the defendant, you would have the right to testify in court. And when you testify you can speak, under oath. You are swearing to tell the truth and you have to tell the truth or there could be a new crime to lie under oath. But your opportunity to speak is limited to testifying at the trial. That's correct. 15:52:02

THE DEFENDANT BENTON HALL: Yes. So I would be limited as to what I could do and say.

THE COURT: Do you understand that if you proceed 15:52:14

without a lawyer, you are not allowed to say anything you feel like to the Court or to the jury, your comments have to be within the boundaries of the Rules of Procedure, and if you just say things that cross over the boundaries, the Court will cut you off and stop you. Do you understand that? 15:52:32

THE DEFENDANT BENTON HALL: I do, Your Honor.

THE COURT: That might look bad in front of a jury if the judge is repeatedly stopping you from saying things. Do you understand that?

THE DEFENDANT BENTON HALL: I do, Your Honor. 15:52:44

THE COURT: Well, I strongly urge you to not to try to represent yourself but have the representation of counsel. Do you understand my advice?

THE DEFENDANT BENTON HALL: I do, Your Honor, and I take it very seriously, which is why when I first appeared 15:53:18 before this court before the magistrate, I asked for standby counsel in case I needed any assistance.

THE COURT: Has anyone made any suggestion to you that you should go without a lawyer?

THE DEFENDANT BENTON HALL: No, Your Honor. 15:53:37

THE COURT: Ms. Settel -- Ms. Jennis, I'm going to ask you if there's any other thing that you think I should inquire of Mr. Hall.

MS. JENNIS: Well, the one curious thing about this case is that Mr. Benton Hall, he has a self-surrender date of 15:53:54

July 15th. So you may want to inquire, you know, what happens if he is in custody and how that might impact him representing himself.

THE COURT: Yes. You will have to self-surrender to begin serving your sentence in the case from South Carolina 15:54:12 beginning July 15. That means you will not be here to talk to people, to talk to witnesses, to interview them, to determine whether they might help you or to have other discussions with Ms. Jennis or anything else. Do you understand that?

THE DEFENDANT BENTON HALL: I do, Your Honor. 15:54:33

THE COURT: I'm having a hard time seeing how you could prepare a case if you are in jail. You won't be able to contact witnesses. How do you plan to prepare your case for trial?

THE DEFENDANT BENTON HALL: Your Honor, like I said 15:54:58 before, I'm not intending to go to trial.

THE COURT: Do you understand that you do not have the choice, just up to yourself, whether to go to trial or not. The government has charged you with a crime. You have the right to require the government to prove its case against you 15:55:13 beyond a reasonable doubt at trial. Only the government has the right to decide whether to offer you some -- we call it a plea agreement. It's an agreement in which you would plead guilty but there would be some limitations as to what the sentence could be. You realize that's entirely up to the 15:55:33

government whether they make an offer and you don't have any control over that. Do you understand that?

THE DEFENDANT BENTON HALL: I do, Your Honor.

THE COURT: So if the government does not make -- I mean, if they make an offer to you, you are totally free to accept it or not. Do you understand that? 15:55:43

THE DEFENDANT BENTON HALL: I do.

THE COURT: But if they do not make an offer to you or if they make an offer that you don't accept, do you understand you will have to go to trial? 15:55:54

THE DEFENDANT BENTON HALL: I do understand that, Your Honor.

THE COURT: That brings me back to how you would prepare for trial if you are in prison and unable to deal with witnesses, to find out whether -- what they might say, arrange for them to be subpoenaed to come to court. How would you do that? I can't see how you could if you are in prison. 15:56:06

THE DEFENDANT BENTON HALL: If I am serving my sentence in the BOP, Your Honor, they have many, many resources to go to such as e-mailing, phone calls, many library books to get to. And I could be in touch with the outside world to get anything I need to get done. 15:56:25

THE COURT: Actually, the Bureau of Prisons has a lot of limitations on what you can do and how much time.

Ms. Jennis, have you run into this before where 15:56:48

somebody is asserting their right to represent themselves when they are, in fact, in custody?

MS. JENNIS: I have not had a pro se defendant. I am not sure, also, how the custody would work if he's in Bureau of Prisons custody but the case is still with the marshals. I don't actually know whose custody he would be in, whether he would be at FCI Phoenix, which I believe is the closest Bureau of Prisons facility or whether he would be at CCA. 15:57:09

THE COURT: The Bureau of Prisons will place him wherever they think best, and the Court has no control over that, as you know. So Ms. Jennis, do you have any understanding as to whether there is any case authority on this question of whether the defendant being in custody, how that a affects his right to represent himself in another matter? 15:57:26

MS. JENNIS: Well, I have some case law that talks about that in *United States versus Pina*. It's out of the First Circuit, that the Court should warn an incarcerated defendant who wishes to proceed pro se that he or she will have limited access to legal materials. 15:57:49

Also, if the defendant is to be shackled, United States -- not United States -- *Faretta versus California* requires that the trial judge inform the defendant of the effect shackling will have on the ability to represent himself. And that was in *Davidson versus Riley* out of the Second Circuit. And that's all the information I have. And I have 15:58:10 15:58:34

not seen any case law that would, of course, not allow an incarcerated defendant to represent himself, merely that these additional warnings should be given.

THE COURT: All right. That's very helpful. Let me proceed with that, Mr. Hall. 15:58:54

Actually, you made a comment that you thought you could do legal research and other things in prison. The reality is that there's very limited access to law library and legal materials. So you would not be able to just do whatever amount you might like to do. It's very limited. 15:59:13

Do you understand that?

THE DEFENDANT BENTON HALL: I do, Your Honor.

THE COURT: Sometimes if a prisoner maybe has a history of being dangerous it may be appropriate for the Court to have the prisoner shackled while in trial. We do everything 15:59:32 we can to prevent the jury from seeing that. But if something might happen do you understand if the jury sees you are shackled that could be harmful to how persuasive they think the government's case is?

THE DEFENDANT BENTON HALL: I understand that, Your 15:59:52 Honor.

THE COURT: Now, in light of all the things we have discussed, including the penalty you might suffer if you are found guilty, in light of all the difficulties of representing yourself, do you still desire to represent yourself, to proceed 16:00:23

without a lawyer, to give up your right to have a lawyer?

THE DEFENDANT BENTON HALL: Yes, Your Honor.

THE COURT: And is your decision entirely voluntary?

THE DEFENDANT BENTON HALL: It is, Your Honor.

THE COURT: And Ms. Jennis, I'm going to allow you to pose any questions you may wish. You don't have to. It's my job. But if there's anything you think would you like to pose I will allow you. 16:00:39

MS. JENNIS: I don't have any questions, Your Honor.

THE COURT: All right. Do we know why the judge in South Carolina found against Mr. Hall's representation of himself? 16:01:07

MS. JENNIS: Well, Your Honor, I did attach the transcript to my motion. And I would say that Mr. Benton Hall's answers today versus his answers that he gave at that time are different. I do have -- and I do apologize. I just wasn't aware that it existed until today. I have a written order and opinion regarding that. If I may approach. 16:01:30

THE COURT: Yes, please. I have looked at the passage from Judge Childs. And in that case, Mr. Hall essentially refused to answer questions. 16:01:49

I'm going to take a minute -- in fact, I will let you all sit down at counsel table. And Mr. Kessler, I am aware of your desire to get back there, but at the same time, I'm not shortening any consideration. So thank you for -- I'm sure 16:02:14

your judge over there knows why you are not there.

MR. KESSLER: She does.

THE COURT: It will get done. The jury will be able to leave before 5.

Have a seat. Mr. Kessler, I assume that's a criminal trial. 16:02:28

MR. KESSLER: It is, Your Honor.

THE COURT: You can remain seated there. But Mr. Hall, you said one reason you want to proceed without a lawyer is because you want to speak. 16:04:55

Are there things you want to say that you think the lawyer would not be able to say?

THE DEFENDANT BENTON HALL: No, Your Honor.

Mr. Hall, do you understand that as the case proceeds, the Court sets various deadlines, times by which things have to be done if they are going to be done. And if a deadline is not met, it usually means that things are foreclosed, something that might have been done before then can no longer be done. Do you understand that the Court will not grant -- and the reason the Court sets those deadlines is to manage the orderly business of the court, to require people to make decisions and to carry them out in a timely fashion and to avoid delay of the proceedings. Do you understand the Court will not grant extensions to do things because you do not have a lawyer? Do you understand that? 16:06:09 16:06:30 16:06:51

THE DEFENDANT BENTON HALL: I do, Your Honor.

THE COURT: You understand if you don't make up your mind on something, significant example is deciding to investigate witnesses, arrange to have witnesses come or indeed deciding whether to accept a plea agreement if the government offers a plea agreement. If you miss those deadlines you have lost the options to pursue those things. Do you understand that? 16:07:02

THE DEFENDANT BENTON HALL: I do.

THE COURT: All right. Well, the reasons that Judge Childs gave for denying self-representation, that is, she could not find that was knowingly intelligently chosen do not apply to what I have been told here today. Based on what Mr. Hall has said in response to my questions, I must conclude that he knows what he's doing and he's doing it freely and voluntarily. 16:07:14 16:07:56

The circumstance, Mr. Hall, what you are doing is extremely foolish. It is not a grounds to prevent you from exercising that right if you want. So I find that the defendant Benton Tyler Thomas Hall has knowingly and voluntarily waived the right to counsel. Therefore, I will permit that defendant to represent himself. 16:08:26

But Mr. Kessler, you are willing to continue to serve as standby counsel?

MR. KESSLER: Yes, Your Honor.

THE COURT: All right. So that appointment will 16:08:39

continue.

All right. With that, we will discharge you, Mr. Kessler. You may return to your other trial and I will proceed with Mr. Gordon Leroy Hall.

MR. KESSLER: Thank you, Your Honor. 16:08:54

THE DEFENDANT BENTON HALL: Thank you, Your Honor.

THE COURT: Mr. Gordon Leroy Hall, would you please come to the podium so you can speak into the microphone?

MS. JENNIS: Your Honor, I'm curious is Mr. Benton Hall excused? 16:09:09

THE COURT: I'm sorry. I'm speaking now to Mr. Gordon Leroy Hall. But I'm sorry, what was your question?

MS. JENNIS: I just want to know if Mr. Benton Tyler Hall was free to go.

THE COURT: He's free to go. Thank you for pointing that out. 16:09:20

Mr. Benton Hall, you are free to go if you want. If you do want to remain, please sit back out in the benches.

THE DEFENDANT BENTON HALL: Thank you, Your Honor.

THE COURT: All right. I'm going to ask you again, sir, please state your true and legal name. 16:09:34

THE DEFENDANT GORDON HALL: Beneficiary Gordon Hall.

THE COURT: Okay. Is there anything further you would like to say to the Court as to why you should be allowed to represent -- proceed without a lawyer? 16:09:58

THE DEFENDANT GORDON HALL: Well, I conditionally accept that we need to proceed any further on proof of claim that the record set forth in public and private showing the establishment of a trust for setoff settlement enclosure for discharge for the public liability does not make the provisions of a *Faretta* hearing for a defendant in dishonor moot. 16:10:18

THE COURT: What's your education?

THE DEFENDANT GORDON HALL: Is this court refusing to --

THE COURT: I'm asking you a question. Are you refusing to answer my question? 16:10:35

THE DEFENDANT GORDON HALL: Is the -- let me ask this, Your Honor.

THE COURT: No. My question to you is: What is the extent of your education? 16:10:45

THE DEFENDANT GORDON HALL: Does the beneficiary of this case need to represent himself when the trustee has not shown cause why he has not --

THE COURT: I'm finding that a refusal to answer that question. At any time that you refuse to answer a question, if later you change your mind and you want to answer it, you can go back and answer it. But for now, that's a refusal to answer my question. I will proceed to my next question. 16:11:07

Have you ever represented yourself in a criminal action? 16:11:22

THE DEFENDANT GORDON HALL: Would it be all right, Your Honor, if we continue this so that I can --

THE COURT: No. We're proceeding now.

THE DEFENDANT GORDON HALL: -- discuss this with potential counsel? 16:11:31

THE COURT: Answer my question now, sir. Have you ever represented yourself in a criminal action?

THE DEFENDANT GORDON HALL: Are you refusing to take judicial notice of the filing in --

THE COURT: I am asking a question, and I am giving 16:11:43 you one last chance to answer my question. Again, have you ever represented yourself in a criminal action?

THE DEFENDANT GORDON HALL: What do you mean by myself?

THE COURT: All right. I'm finding a refusal to 16:11:56 answer that question as well. If at any time you decide to answer a question, come back and you are free to answer it. I proceed to another question.

THE DEFENDANT GORDON HALL: Has this Court not received a filing in chambers and a petition for the Court to 16:12:19 open the material provided?

THE COURT: I haven't seen them and they are not before the Court at this time. Actually, I have received documents that gave been mailed to me. They are not file stamped with the court's number. 16:12:34

THE DEFENDANT GORDON HALL: Is this court --

THE COURT: Please.

THE DEFENDANT GORDON HALL: Excuse me, Your Honor.

THE COURT: You can speak in a moment.

First is a document dated June 10, 2014, entitled, "Petition for Court to take Mandatory Judicial Notice of Sealed Filing in Chambers" that references another document which, again, I'm not sure if it's been filed but I have received it. There is a brief letter addressed to this judge and attaches certain documents that are Uniform Commercial Code financial statements and related documents all of which are nonsensical in relation to this case. I have received them. 16:12:43 16:13:04

Now, let's go on to my questions, Mr. Hall.

Again, do you understand that in Counts 1 and 2, is it making the instrument, Ms. Jennis? 16:13:32

MS. JENNIS: Yes, Your Honor.

THE COURT: You are charged with making certain fraudulent fictitious instruments, specifically documents dated January 24, 2013, purporting to be, number one, a money order in the amount of $868,397.60, and Number 2, a money order, same date, purported money order, in the amount of $635,176.26. 16:13:50

Do you understand those are the charges against you on Counts 1 and 2?

THE DEFENDANT GORDON HALL: Are you refusing to take judicial notice -- 16:14:10

THE COURT: Sir, I'm asking you a question. I'm ordering you to answer my question. I take your words now as a refusal to answer. I will give you another chance to answer my question. Do you understand those are the charges against you?

THE DEFENDANT GORDON HALL: I understand those are the charges against the defendant. 16:14:25

THE COURT: Are you not the defendant, Gordon Leroy Hall?

THE DEFENDANT GORDON HALL: I conditionally accept that the defendant is an illegal entity, and I am not the trustee -- 16:14:38

THE COURT: Let me finish this.

On Counts 3 and 4 you are charged with counts of using those same purported instruments. Do you understand those charges against you? 16:14:52

THE DEFENDANT GORDON HALL: Are you testifying from the bench that I am --

THE COURT: Sir, answer my question. Do you understand those are the charges against you?

THE DEFENDANT GORDON HALL: I understand those are the charges against the defendant. 16:14:59

THE COURT: Do you understand you could be sentenced for up to 25 years in prison for each of those four charges for up to a total of 100 years in prison? Do you understand that?

THE DEFENDANT GORDON HALL: No, I don't understand 16:15:10

that.

THE COURT: Do you understand that you could be sentenced, in addition to any time in prison, to a fine of up to $250,000 for each of those four counts of which ones you are convicted of. Do you understand that? 16:15:31

THE DEFENDANT GORDON HALL: In light of the fact that the case is being resolved and the CFO is the trustee now liable for this matter.

THE COURT: And do you understand that Count 5, that's a firearm charge, correct, Ms. Jennis? 16:15:43

MS. JENNIS: Yes, Your Honor. And that carries a 10-year mandatory -- I mean maximum, not mandatory.

THE COURT: Do you understand in Count 5 you are basically charged with being a felon in possession of a firearm? Do you understand that charge against you? 16:16:00

THE DEFENDANT GORDON HALL: I understand the defendant has been charged with that.

THE COURT: Okay. Sir, are you that defendant, Gordon Leroy Hall?

THE DEFENDANT GORDON HALL: I'm here today as the 16:16:14 beneficiary of the trust for settlement in this matter.

THE COURT: And there are also forfeiture allegations that seek a forfeiture of certain firearms and ammunition against you. Do you understand those allegations against you?

THE DEFENDANT GORDON HALL: I hear that you say they 16:16:32

are against the defendant.

THE COURT: All right. Are you familiar with the Federal Rules of Evidence?

THE DEFENDANT GORDON HALL: Is this court refusing to take judicial notice of the filings in chambers -- 16:16:52

THE COURT: Sir, I'm asking that question one more time. And I take your comments as a refusal to answer. This is your last chance to answer. Are you familiar with the Federal Rules of Evidence?

THE DEFENDANT GORDON HALL: Are you refusing to -- 16:17:05

THE COURT: That's a refusal to answer.

Are you familiar with the Federal Rules of Criminal Procedure?

THE DEFENDANT GORDON HALL: Are you refusing to take judicial -- 16:17:13

THE COURT: Second chance. Are you familiar with the Federal Rules of Criminal Procedure?

THE DEFENDANT GORDON HALL: In what capacity are you talking about?

THE COURT: All right. That is a refusal to answer. 16:17:20
I don't know that I need to continue this charade any longer, but I will a little bit longer.

Tell me why you want to proceed without a lawyer in this case, to give up your right to a lawyer.

THE DEFENDANT GORDON HALL: Did I tell you I wanted to 16:17:42

proceed without a lawyer, Your Honor?

THE COURT: Let me ask you that. Do you wish to proceed without a lawyer in this case, that is, to proceed in the case without the assistance of a lawyer to represent you?

THE DEFENDANT GORDON HALL: I wouldn't say that. What I'd like to do is continue this so that I could explore that. 16:17:53

THE COURT: I'm not granting you a continuance, sir. I'm asking you a question: Do you wish to proceed without a lawyer in this case?

THE DEFENDANT GORDON HALL: I don't have an answer for you without discussing it with an attorney. 16:18:06

THE COURT: Sir, you have had plenty of time to do that, have you not?

THE DEFENDANT GORDON HALL: And how -- I'm not trying to make it difficult on Your Honor. How do you figure I have had plenty of time to do that when I have been precluded from accessing a phone, precluded from accessing any reasonable access to an attorney or a phone. In the first seven days of arriving at CCA I was locked down without access, except at a minimal at one point. And subsequently, phone calls are disconnected the rest of that. So I'm merely asking for some time to explore that so if I'm going to continue this, I would -- 16:18:17 16:18:40

THE COURT: I'm not going to delay these proceedings.

THE DEFENDANT GORDON HALL: I would not do it without 16:18:54

an attorney. I would not proceed without an attorney.

THE COURT: Sir, you had requested this hearing to proceed without an attorney. It is clear to me that this is done for delay and obstruction, that you are trying to delay the proceedings that were scheduled now by professing to need an attorney when the whole reason we're here is because you asked to proceed without an attorney. 16:19:06

THE DEFENDANT GORDON HALL: I conditionally accept that on proof of claim that the record set forth in public and private showing the establishment of a trust for setoff settlement closure for discharge for the public liability doesn't make the provisions of an attorney or a continuation as it relates to the defendant moot. 16:19:24

THE COURT: All right. I think this is enough.

I find that Mr. Hall has refused to cooperate with the Court, refused to answer questions; that he has proceeded for purposes of obstruction and delay. There is no reasonable basis to think that if allowed to proceed without counsel he will cease that obstruction and delay. 16:19:40

And the Court -- well, hold on a minute. Also, the Court finds that Mr. Hall's comments are nonsensical and in bad faith. And he has failed to demonstrate a knowing intelligent waiver of his right to counsel. And therefore, it is ordered that Defendant Gordon Leroy Hall's request to proceed without counsel is denied and we will proceed to appoint counsel. 16:20:07 16:20:52

Do we have -- Ms. Jennis, have they already gone through proceedings to determine if he's eligible for appointed counsel?

MS. JENNIS: Well, I listened to the initial appearance, Your Honor, and they had somebody there but I don't recall -- I couldn't hear if he had filled out a financial affidavit. 16:21:07

I will note to the Court that this Friday at 9:30 a.m. there is a detention hearing for Mr. Gordon Hall. And I wanted to have this hearing first to have a determination prior to that hearing. 16:21:26

THE COURT: How do you suggest that I proceed to see that my order is implemented that he have counsel?

MS. JENNIS: Well, I think you could still have counsel appointed, and we would have an appointment of counsel set at the same time we have the detention hearing set and then the magistrate judge could determine if we need to continue a detention hearing. 16:21:41

THE COURT: I could leave that to the magistrate judge. 16:21:54

All right. Very well then. What time is that hearing set?

MS. JENNIS: I believe it's 9:30 on Friday, June 13th, before -- I believe it's Judge Burns.

THE COURT: All right. It is further ordered that the 16:22:13

magistrate judge proceed at the detention hearing set for June 13 at 9:30 with the appointment of counsel and that I intended to broadly leave that up to her judgment as to who to appoint and how to do that.

Your Honor, if I'm willing to accept appointed counsel can we just waive the hearing? 16:22:32

THE COURT: Yes. Let us proceed with that.

With the benefit of the discussions we have had today are you now willing to proceed with appointed counsel?

THE DEFENDANT GORDON HALL: In light of your comments that, you know, my concern is that I'm perceived as acting in bad faith, which it is not my intention to, Your Honor, and nor do I wish to offend your august office, because I understand the importance of not -- certainly not dishonoring this office nor yourself nor wasting your time nor Mrs. Jennis's when much like my son, I don't intend to waste the Court's time with a trial and only merely wish to resolve the matter. 16:22:50 16:23:17

THE COURT: I do not want to discourage anyone from having a trial. You were here earlier when I spoke to Defendant Benton Tyler Thomas Hall and you are free to have a trial, to require the government to prove its case against you. So I don't wish to discourage that at all. But I want to be clear now. Are you now electing to accept counsel in this case? 16:23:35

THE DEFENDANT GORDON HALL: I am -- in light of your 16:23:54

comments and in light of my concern for retribution --

THE COURT: There will be no -- Mr. Hall, you don't have to be worried about whether the findings I make in this matter will be held against you. You are entitled to fair proceedings in every matter that comes before the Court. And 16:24:14 so you don't have to worry about the Court having any bias against you. So I want to ask you again, are you --

THE DEFENDANT GORDON HALL: I have some counsel I speak to on the outside, and perhaps being allowed to speak with him on Friday so I don't waste this Court's time -- 16:24:37

THE COURT: No, I'm going to conclude this matter today at this time. I made my ruling. I stand by it. It would be simpler if you benefit from the discussion we have had and accept that it is wise for you to accept the benefit of counsel because we didn't get to this, but it is almost always 16:24:58 utterly foolish to proceed without a lawyer. You will almost always hurt your case because much of the law and the evidence, the procedure is technical and it is geared not to set up traps to hurt people. It's geared to have fair proceedings, fair evidence, a fair trial, that has the best chance of having a 16:25:24 verdict that comports with truth. But those rules, if they are not complied with, you lose opportunities. And only a lawyer can really know what those opportunities, what those benefits are in a full way.

THE DEFENDANT GORDON HALL: I clearly understand that. 16:25:44

And to consider going forward within this courtroom without competent counsel in that concept that you are speaking of, I agree with you, is not a good idea and would be foolish and would so --

THE COURT: Therefore, do you agree to proceed with 16:26:00
counsel and to withdraw your request?

THE DEFENDANT GORDON HALL: Well, in light of my fear from this as well as no offense given to CCA and the marshals, but all of my legal books, my -- the rest of those things have all been removed, taken, and they are making it impossible to 16:26:16
obtain. They are refusing my mail that's lawful and legal. So that leaves me with no other choice but to, in light of the court refusing certain filings --

THE COURT: Well, the Court hasn't refused any filings. I assume they have been sent to the clerk. I don't 16:26:39
know if they have been sent to the clerk.

All right. Thank you, Mr. Hall. I want to make clear that I'm proceeding in two independent ways: Number one, I have found that the defendant is not entitled to proceed without counsel for the reason I previously stated. However, 16:27:01
or in addition to that, Mr. Hall has stated that he withdraws his request to proceed without counsel and he will accept counsel. So I want to be clear that the defendant has abandoned that request, but in any event, I have made a finding based on these discussions here that he's not entitled to 16:27:19

proceed without counsel.

Let's see. I think that concludes this matter. Ms. Jennis, is there anything I have omitted that I should address?

MS. JENNIS: No, Your Honor. I would just add, and it seems like you are going to do this anyway, set this for appointment of counsel perhaps on Friday. 16:27:34

THE COURT: Yes. Actually, I want to send that to -- is there anything set for this defendant before a magistrate judge at this time?

MS. JENNIS: Yes. Friday at 9:30 before Judge Burns. 16:27:46

THE COURT: Oh, I'm sorry. That's the same as the other one, right?

MS. JENNIS: The other defendant doesn't have anything set. For Mr. Gordon Hall, he has a detention hearing set 9:30 before Magistrate Judge Burns. They could do appointment of counsel at that time. 16:28:01

THE COURT: It is ordered that the matter of appointment of counsel is set before Magistrate Judge Burns for June 13 at 9:30.

All right. We will be adjourned. Thank you. 16:28:16

MS. JENNIS: Thank you, Your Honor.

(Proceeding concluded at 4:28 p.m.)

C E R T I F I C A T E

I, LAURIE A. ADAMS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 7th day of September, 2015.

s/Laurie A. Adams
_______________________________
Laurie A. Adams, RMR, CRR