**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_________________

| | | |
|---|---|---|
| **United States of America,** Plaintiff, | ) | No. **CR 14-0184-1-PHX-NVW** |
| vs. | ) | Phoenix, Arizona<br>January 7, 2015<br>10:35 a.m. |
| **Gordon Leroy Hall,** Defendant. | ) | |

**BEFORE: THE HONORABLE NEIL V. WAKE, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**(*Motion Hearing*)**

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**APPEARANCES:**

For the Plaintiff:

U.S. ATTORNEY'S OFFICE
By: **Lisa Jennis, Esq.**
By: **Monica B. Edelstein, Esq.**
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004

For the Defendant:

STEPHEN C. KUNKLE PLLC
By: **Stephen C. Kunkle, Esq.**
5150 N. 16th Street, Suite A222
Phoenix, Arizona 85016

P R O C E E D I N G S

THE COURTROOM DEPUTY: Criminal Case 2014-184-01, United States of America versus Gordon Leroy Hall. This is the time set for oral argument. 10:35:36

Counsel, please announce for the record.

MS. JENNIS: Good morning, Your Honor. Lisa Jennis for the United States.

MR. KUNKLE: Good morning, Your Honor. Stephen Kunkle on behalf Mr. Gordon Leroy Hall who is present and seated to my right. 10:35:51

THE COURT: Good morning, counsel. And good morning, Mr. Hall.

Well, I do have an ex parte matter, but I do appreciate you being here, Ms. Settel, because I -- we have this set for trial in two weeks, but I just don't see that 10:36:03 going now.

Well, actually, maybe, depends on how I resolve the ex parte matter. But for the ex parte matter I have to address, is the case otherwise everyone prepared for trial?

MR. KUNKLE: Your Honor, to be frank with the Court, 10:36:20 no. And that kind of delves into the other issues that are before the Court right now. I kind of anticipated you may ask me that. As I stand here today, if the I had to, could I try this case? Probably. But there's a lot of different pitfalls that I think, if we did that, this would be a matter we might 10:36:44

see again down the road in terms of the posture right now. And I can delve into that a little more fully when we speak ex parte. Hopefully I can be a little more free. I apologize in the motions I wasn't more explicit but I'm trying to navigate a fine line here, Your Honor. 10:37:04

And I would just be honest with you right now. I don't believe a trials is tenable in two weeks time. And I had anticipated just putting in a motion to continue but then I saw where the other people were taking pleas and there was this issue I have already given the Court one motion on. And I 10:37:19 think that that needs to be resolved first at the threshold level. And now I have the other issues I need to address for the Court as well and I will explain further.

THE COURT: Are you ready, Ms. Settel?

MS. JENNIS: For trial? 10:37:37

THE COURT: Yeah.

MS. JENNIS: Yes, Your Honor.

THE COURT: You know, this is the problem. If there's going to be some delay I need to let you know right away because you have got all your witnesses lined up, and that's a 10:37:48 burden on everybody.

MS. JENNIS: I also -- Mr. Kunkle did file his motion a while ago and has certainly kept me abreast of the situation. So I did know that today was a day that could be dispositive of whether the trial was going on January 20th or not. So we have 10:38:06

kept in touch the entire time. He has kept me fully informed of the posture for his defendant.

THE COURT: How many witnesses and trial days do you contemplate, Ms. Settel?

MS. JENNIS: I think we had four days of trial. I have not counted my witnesses, because some of the evidentiary witnesses I haven't, you know, it would depend on stipulations since there's a lot of evidence. But I will draw up a number, a dozen. So the evidentiary witnesses I have not figured out the exact people, because that depended on chain of custody and stipulations, et cetera. 10:38:22 10:38:42

THE COURT: And I have read your expert witness disclosure. Mostly your expert witnesses don't really look like expert witnesses, but I see why you are being cautious by labeling them just in case. 10:39:06

MS. JENNIS: And, of course, I would want the defense counsel to know what they could expect.

THE COURT: What exactly did he do here in the government's view?

MS. JENNIS: In a summary, he and his co-defendants created a money order under 514, a money order that looked real, okay. And the money order was intended to pay off his tax debt. So he had a tax debt. He called the revenue officer, found out exactly how much it was, and then created two money orders. 10:39:16 10:39:45

THE COURT: On a real bank, false instrument?

MS. JENNIS: Not a real bank, hence the fictitious document charge. But drawn upon the federal reserve signed by the Secretary of Treasury. It's a common belief by a group called Sovereign Citizens that somehow when you are born you get a social security number and that number is used as like collateral to get gold from other countries so you can draw on this pot of gold in order to pay your debt, whether it be a tax debt or a credit card debt or mortgage, any kind of debt. 10:40:01

And so part of what the defendant did in addition to this was teach other people how to eliminate their debt. But specifically charged in the indictment is the way he eliminated his own tax debt. The co-defendants were involved. One person was involved in creating the check and printing the check. One was mailing the check. And it wasn't just done for him. There was probably, you know, I don't know, a lot of other people. But close to $100 million just for eliminating tax debt. 10:40:21 10:40:41

In this case, his specific tax debt was approximately $1.6 million. And there were two checks involved, and they are listed in the indictment. That's the general scheme, Your Honor. But the United States has multiple elements to meet, one of which is, you know, the intent to defraud whether it looked like a financial instrument. That's where an expert testimony comes in. 10:41:01

Also, Your Honor, the defendant is a prohibited 10:41:18

possessor and when the search was done at his home several firearms were found.

THE COURT: Are there firearms charges, too?

MS. JENNIS: Yes. One count just against this defendant, not against the co-defendant. 10:41:29

THE COURT: All right.

MS. JENNIS: As he has a prior felony.

THE COURT: Well --

MS. JENNIS: And you understand that Mr. Hall is serving a sentence right now. 10:41:41

THE COURT: Actually, no, I did not.

MS. JENNIS: Okay. Well, Your Honor, he was recently convicted in South Carolina. And I think he got a 188-month sentence there. And he was arrested in March of 2013. So just so you know he has a bit of time left on that sentence. So 10:41:59 that was -- this was actually his fourth federal case. He has three prior federal convictions.

THE COURT: What was that last conviction for?

MS. JENNIS: I actually brought the indictment with me. I don't remember exactly what he pled to. I think he pled 10:42:16 to conspiracy. I think it's like a conspiracy involving mail fraud. It's different underlying facts. And here it has to do more with hiding illegally obtained assets of another person.

And his son, who is one of the other co-defendants, Benton Hall, he was also convicted in that matter and is also 10:42:49

serving has sentence, although he has agreed to plead.
THE COURT: Were they tried or did they plead guilty?
MS. JENNIS: They pled guilty. So, Your Honor, I
wanted to disclose -- and Mr. Kunkle knows about this -- that
there was a competency hearing, just like we had a *Faretta* 10:43:02
hearing. I don't remember if you recall several months ago.
They had one also in South Carolina.
THE COURT: I recall I reached a different conclusion
than the judge in South Carolina, didn't I?
MS. JENNIS: Only for Mr. Benton Hall, Your Honor. 10:43:18
THE COURT: Right. And I could see why the judge
there wanted to go that way. It's such a mess.
MS. JENNIS: I think that Benton Hall learned a lot by
going through that process that has changed him. But Mr. Hall
was sent for an evaluation at a federal detention center. I am 10:43:41
just working with South Carolina to get that report unsealed
for purposes of the Court's review and doctor's review and
defense counsel, any defense counsel's review. It's currently
sealed but I have spoken with South Carolina are we're working
to get it unsealed for the limited purpose that just the people 10:44:03
working on this case would have access to it.
I guess it's obvious he was determined able to stand
trial because he did resolve that case. He actually pled no
contest is my understanding, something they allowed him to do
in South Carolina over the government's objection. I think 10:44:21

it's important you know that, too.

THE COURT: What's the practical consequence, difference between pleading no contest and pleading guilty.

MS. JENNIS: I guess you could argue appellate purposes, Your Honor, it certainly doesn't prevent you from appealing. It certainly wouldn't give you additional benefit from anything the United States could give you under a plea agreement, which would be obviously more beneficial. I think a no contest plea you still have to meet the elements, but it's Justice policy we don't do those sorts of pleas but obviously it's up to the Court not to accept that.

MR. KUNKLE: Your Honor, most of the time it involves the inability, for various reasons, to maybe recollect events that somebody can't conjure a factual basis. Often times it's an inability to admit guilt, not an *Alford* plea where they basically acknowledge they could be found guilty but there's no "I am guilty" statement necessarily.

THE COURT: The way we deal with that here is the defendant admits the government could readily prove that beyond a reasonable doubt. That's how I have covered that. I think that's the practice here so when people want to plead guilty but don't have a memory.

So -- and the government has already shown that they have proof beyond a reasonable doubt independent of their memory. Anyway, I digress.

All right. Ms. Settel, I don't know where this is going to go. So if you don't mind, it might be helpful to have you remain outside.

MS. JENNIS: I'd be happy to step outside, Your Honor, and wait. 10:46:12

THE COURT: Right now this trial is still on. I will hear Mr. Kunkle.

MS. JENNIS: You know that the plea dates have been set for the co-defendants on the 15th and 16th of this month, I believe. 10:46:23

THE COURT: And I don't recall. Has the plea deadline for Mr. Gordon Hall expired?

MS. JENNIS: Well, the plea deadline that you set, yes, has expired for all defendants.

THE COURT: Okay. Well, I'm not going to worry about 10:46:34 that until I resolve the matter I have with Mr. Kunkle.

MS. JENNIS: United States at this point has not set a plea deadline, for your information, but you did.

THE COURT: Yes or no, do you have a plea offer outstanding? 10:46:47

MS. JENNIS: Yes, Your Honor.

THE COURT: Okay. All right. If you will step outside we'll --

MS. JENNIS: Certainly.

THE COURT: -- let you know when we're done. And the 10:46:52

reason I ask you to remain is we might need to talk with you some more.

Oh. Ms. Jennis.

MR. KUNKLE: She's gone.

THE COURT: I just want to apologize for calling her the wrong name. I will tell her that when she comes back. 10:47:17

MR. KUNKLE: I have done that the last few times.

I understand we are going to proceed under seal?

THE COURT: Yes. The proceeding is under seal.

MR. KUNKLE: Okay. 10:47:29

THE COURT: All right. Hold on. We have an audience member.

(Proceedings held from 10:47 a.m. until 11:23 a.m. were filed under separate cover.)

(In open court.) 11:24:32

THE COURT: First of all, Ms. Jennis, I want to apologize for stating your name wrong. I will try to get used to this.

MS. JENNIS: It happens all the time, Your Honor.

THE COURT: I will bet it does. 11:24:40

MS. JENNIS: It's all right. Thank you though.

I also charge everyone with correcting me immediately any time I get anyone's name wrong. I'm embarrassed and I would rather be corrected.

Couple of things. Ms. Jennis, do you know about this 11:24:56

prior competency report and can we get that report? Do you have any understanding about that?

MS. JENNIS: The competency report that you mentioned previously? Yes, Your Honor. I have possession of it.

THE COURT: You have it? 11:25:13

MS. JENNIS: I do have it. I actually have it with me. However, it is sealed, of course. I am working with South Carolina and hope to get it unsealed this week.

THE COURT: I would like to have that done as fast as possible. 11:25:23

MS. JENNIS: Certainly.

THE COURT: Because I would like to see it and, of course, share it with the defendant and counsel. For now --

MS. JENNIS: And, Your Honor, excuse me one moment. That is my goal to have it unsealed for the purposes of for you 11:25:33 and for any defense counsel that may be appointed now or in the future and also any medical facility if happens.

THE COURT: Let me -- I have denied Mr. Kunkle's motion to withdraw.

MS. JENNIS: Okay. 11:25:53

THE COURT: And the trial date stands. And if this case does go to trial and there's a conviction there will be an appeal and you will see all of this. So I have found that the defendant must assist his counsel, and his failure to do so is not a basis for change of counsel or delay in proceedings. 11:26:19

And for now, he is able to do so. However, I do want to see that competency report because if that sheds a different light I may reconsider all of that. There has not been a request for a competency determination here, and we have the somewhat recent competency determination in the South Carolina case. 11:26:39

Now, I'm not suggesting you do this now, Ms. Jennis, but at some time you might want to make a record of the plea offer that was made. I will extend the time, my deadline to neutralize any -- Nick, what is my deadline for the plea agreement? 11:27:04

MR. KUNKLE: May I have a moment?

THE COURT: You may.

THE COURTROOM DEPUTY: January 6.

THE COURT: I will extend that. But I just want to talk for a minute, because Mr. Hall, as I think I have explained to you before, I set a deadline after which I don't allow the parties to enter into a plea agreement. The case will just -- as a defendant, Mr. Hall, you have the right at any time to plead guilty to the charges. Do you understand that? 11:27:34 11:27:55

THE DEFENDANT: I conditionally accept your offer on proof of claim that this Court having been divest of subject matter doesn't make your offer moot. And I don't have a right to receive and I'm demanding and requesting that you bring 11:28:09

forth the document moving this Court, the party who is moving that.

THE COURT: All right. I'm going to just restate what I stated in the ex parte portion. I find that the defendant's behavior is feigned, does not -- it reflects a refusal to acknowledge what he understands about these proceedings and will not be allowed to disrupt the proceedings. 11:28:23

However, I want to see that competency report. And if there's any reason to think, you know, a sufficient reason to think other proceedings should be taken we will address that immediately. But for now, I find the defendant is willfully refusing to answer the Court's answers and willfully refusing to communicate with his lawyer, none of which entitles him to a new lawyer or delay in the proceedings, and that he understands sufficiently the nature of this proceeding and how to assist his lawyer because he's done that until recently. 11:28:40 11:29:02

MR. KUNKLE: And, Your Honor, I was going to ask you, you are basically saying preliminarily based on what I filed you are finding Mr. Hall to be competent.

THE COURT: Yes. 11:29:16

MR. KUNKLE: This is along the line of malingering type of behavior.

THE COURT: Exactly. Exactly.

Now, there was one other thing. Now, Mr. Hall, the reason I don't allow the parties to enter into a plea agreement 11:29:36

at the last minute is I, first of all, I want the defendant to have ample time to think about what decision to make. You have already had ample time. That's been accomplished.

Secondly, I don't want the lawyers to waste a lot of time doing last minute trial preparation just so the defendant can decide at the last minute to accept a plea offer. Again, you have a right to plead guilty at any time the until the jury returns a verdict, but a plea agreement usually has terms that benefit the defendant. If you want to have those terms you have to do it within the time limit that I set. 11:29:54 11:30:11

And third, we force people to come here to serve on the jury. We bring a lot of people in. I don't want to waste a day or more of the lives of 30 or 40 or 50 people just so a person can think about whether they want to accept a plea agreement. So I'm going to set -- I will extend the deadline for entering into any plea agreement to -- let's see. This is the 7th of January. 11:30:30

MR. KUNKLE: Your Honor, I think you set a January 13th trial -- pretrial conference in here.

THE COURT: Okay. 11:30:47

MR. KUNKLE: Yeah.

THE COURT: Why don't we set that date then.

MR. KUNKLE: That's one week before the trial. It's about a week from today. You know, I will do what I can, obviously. 11:30:58

THE COURT: How about I will extend my plea deadline to January 13. And if it turns out if he decides to accept a plea I can take a change of plea on that day.

MR. KUNKLE: Very well, Your Honor. Thank you.

THE COURT: It is ordered extending the Court's deadline for acceptance of a plea agreement to January 13. And that means entering a plea of guilty pursuant to a plea agreement. 11:31:12

Now, I think that's everything I wanted to talk about. Anything else, Ms. Jennis? 11:31:28

MS. JENNIS: I have just a logistical question, Your Honor. I believe you mentioned that you would want all the defendants present at the pretrial conference.

THE COURT: Well, the other two are pleading out.

MS. JENNIS: So they don't need to be present? 11:31:40

THE COURT: No.

MS. JENNIS: Because their pleas are set after the pretrial conference is the only reason I mention that. And I was trying to -- I know that Mr. Benton Hall is in custody but Mr. Brandon Adams lives out of state in New Mexico and I was just trying to -- I believe his is set on the 16th. I just wanted, if you did require their presence I wanted you to know that since there is some time in between. 11:31:51

THE COURT: Who is the magistrate judge who is taking those pleas? 11:32:09

MS. JENNIS: I believe it's Judge Burns.

THE COURTROOM DEPUTY: Judge Burns. They just set them yesterday.

THE COURT: Well --

MS. JENNIS: I just mention that so the Court knows that Mr. Adams just is in a different posture because he is located out of state.

THE COURT: I wish those had not been scheduled that late.

MS. JENNIS: And I'm not sure of Judge Burns's schedule. I don't wish they were scheduled that late either.

MR. KUNKLE: May I make a suggestion?

THE COURT: Mr. Kunkle.

MR. KUNKLE: I believe one change of plea date is the 15th. The other is the 16th.

MS. JENNIS: Correct.

MR. KUNKLE: If I may make a suggestion, Your Honor, if the pretrial conference -- if they are set for a change of plea and I could use the additional time for a pretrial conference, if the Court is willing -- and I understand the other two counsel and defendants aren't here, but it looks like I'm going to be the only guy going to trial maybe, I would suggest maybe vacating that as the pretrial conference on the 13th. I could use the additional time in terms of what I have been dealing with on this case to move that back to later in

the week to the 16th. And then that way, they don't have to be here for the pretrial conference. And if there is a plea I will notify Mr. Sommers immediately by e-mail and we can get it on the calendar. But I will notify the Court prior to the 16th then. 11:33:38

THE COURT: All right. Are you all available -- what time is that change of plea on the 16th?

MS. JENNIS: I'd have to check my calendar, Your Honor.

THE COURTROOM DEPUTY: 1:30. 11:33:47

MS. JENNIS: Mr. Sommers knows.

I do have one other thing to say.

THE COURT: Go ahead.

MS. JENNIS: I actually have jury duty, Your Honor. Hasn't happened to me in 10 years. Obviously, the chance of me 11:33:57 being selected are small. And I do have co-counsel, so I'm not concerned about missing the trial. But my jury duty the first day is actually 13th. So it would be beneficial if we could just move it to a different day just in case I do have to go down there. 11:34:17

THE COURT: That's fine. I will move it to the 16th.

MS. JENNIS: Thank you.

Is there anything soft on those plea agreements with the other defendants?

MS. JENNIS: Is there anything, I'm sorry, what? 11:34:31

THE COURT: Well, how confident are you that they will stand by those?

MS. JENNIS: Oh. Okay. My confidence level. My confidence level in Mr. Benton Hall is strong. My confidence level in Mr. Brandon Adams is less because, again, Your Honor, as you probably have realized, there are certain beliefs that this -- that surround this case. And sometimes I think it's difficult for one to -- you know, whatever. Your Honor, I feel very confident in Mr. Benton Hall who is pro per and a little less confident in Mr. Adams. We have discussed it. His attorney is on top of it. I think we will do our best to have it go through. 11:34:45 11:35:09

THE COURT: Here's the problem. On January 16 I am not available. We are interviewing applicants for a magistrate judge appointment and then we have the investiture for, I think, Judge Logan. 11:35:23

MS. JENNIS: Judge Logan, yeah.

THE COURT: So I have a different idea.

By the way, when did those defendants agree to the plea agreement? 11:35:41

MS. JENNIS: Prior to the new year, I believe, Your Honor. 2014. But just at the end of the year, so I just think it's probably just a scheduling issue.

THE COURT: This is -- the scheduling issue is just a problem. If I have got a trial on the 20th and the guilty 11:35:59

pleas are coming in one or two work days before, there's no room for anything to go wrong.

MS. JENNIS: That's true, Your Honor.

THE COURT: So here's what I'm going to do. I'm going to take those changes of plea myself, and we can reset the 11:36:11 pretrial to the 15th. But I'm going to have to move whoever is set for the 16th a day or two earlier.

MR. KUNKLE: May I, Your Honor?

THE COURT: You may.

MR. KUNKLE: So Nick, I'm going to have you contact -- 11:36:38 actually, you can tell us, Ms. Jennis, whether you are unavailable.

MS. JENNIS: I have co-counsel, so I'm not concerned about my availability for a plea. I will make sure someone from my office is here. It's only the 13th I know is my day to 11:36:51 report.

THE COURT: Is that superior court?

MS. JENNIS: It is superior court, actually in Mesa. You call in the night before to find out.

THE COURT: Right. 11:37:03

MS. JENNIS: The chances, obviously, of me being chosen are very slim.

THE COURT: Right. So Nick, I'm going to ask you to deal with the magistrate judge and with counsel in the other case. Move that January 16 guilty plea up to no later than 11:37:16

January 14. Just find out -- and oh, actually, defendant's in New Mexico and he's out of custody?

MS. JENNIS: The defendant is out of custody in New Mexico, the one for the 16th.

THE COURT: So it's not a sure thing he can get here, although Nick, you are going to have to -- that's just setting those pleas too late. That was not an adequate time to set those pleas. So Nick, deal with the magistrate judge and deal with the lawyers to see when we can get them in here for me to take the change of plea. And if we have a problem let me know and check with Mr. -- well, we know somebody will cover this from the U.S. Attorney's Office so let's do that. 11:37:31 11:37:52

And then we can set the final pretrial conference to January 15. I think I have some other things on that day so when am I available? 11:38:14

THE COURTROOM DEPUTY: Is an hour enough time, Judge?

THE COURT: An hour should be enough time.

MS. JENNIS: Yes.

THE COURTROOM DEPUTY: 11:00.

THE COURT: It is ordered continuing the final pretrial conference from January 13 to January 15 at 11:00. 11:38:25

Anything else, counsel?

MR. KUNKLE: I'm sorry, January 15th at 11:00?

THE COURT: Correct. And, you know, have you -- Ms. Jennis, have you read that competency evaluation? 11:38:46

MS. JENNIS: I have, Your Honor.
THE COURT: Does it raise any questions in your mind?
MS. JENNIS: No, Your Honor. I don't think it's going to change what you already stated.
THE COURT: All right. I want to be thorough about it, but that's my working assumption that this date is going. I did mention something else in the ex parte portion that I will tell you also, Ms. Jennis. If there is any issues of disruption in this trial there will be no mistrial. If the defendant engages in disruptive conduct, the jury sees it because the defendant has chosen to do it.
I have also advised Mr. Hall that if there is any disruption I will arrange, as I have in the past, to have a video link to the holding cell. He will be kept in the holding cell. We'll get another lawyer to sit there with him. Mr. Kunkle will be the lead lawyer examining so he can talk to the lawyer at any time. And after every examination is concluded I will allow them to break, to talk to each other so Mr. Kunkle can have the benefit of any input from Mr. Hall and his second lawyer. So this trial will not be obstructed or delayed.
Of course I wouldn't do that unless there is some disruption. But disruption, again, will be a self-inflicted harm and no basis for delay of the proceedings.
Nothing else then, counsel, thank you. We'll be adjourned.

11:38:57 11:39:18 11:39:37 11:39:56 11:40:18

MR. KUNKLE: Your Honor, I know it's 20 of. I don't know if the Court -- you had mentioned before to Ms. Jennis if she was prepared at this point to put on the record the plea. Do you want to wait on that?

THE COURT: She can do it now or at the final pretrial conference. And it's up to you whether you want to put it on the record what your plea is. 11:40:31

MR. KUNKLE: Just so the record is clear, I have given a copy of that plea agreement to Mr. Hall to read, presumably.

THE COURT: I'm not asking to do that. I just see prosecutors do that routinely now. 11:40:46

MS. JENNIS: Well, if Mr. Kunkle believes it would be helpful I would defer to him. There's one stipulation in the plea that is extremely helpful to the defendant.

THE COURT: My sense is that should be done but you don't have to do it now. We can do it at the final pretrial conference. 11:41:03

Actually, is there a benefit to doing it now?

MR. KUNKLE: I don't know, Your Honor. It could probably wait. But, you know, just so you know, I have already made a record as to how many times I have tried to talk to him about this. He has a copy of the plea. Initially that was the big concern, was the concurrent time. That is in the plea. I don't think I'm stepping too far afield here. So yeah, I mean, to the extent Ms. Jennis would do it now he's already heard it. 11:41:24 11:41:42

MS. JENNIS: And I agree with Mr. Kunkle in that the benefit of the plea, the most -- I mean, there's lots of benefits in this plea. But the benefit to this defendant is that it stipulates for concurrent time. He's serving a very lengthy sentence now, 188 months. And whatever happens in this 11:41:59 case, he would get credit, you know, for the time he's been in custody on this case and as a stipulation would be concurrent time, which I think is a significant benefit.

THE COURT: I think you will want to make a record on that, but let's do it at the final pretrial conference. 11:42:20

MS. JENNIS: Thank you, Your Honor.

THE COURT: Thank you. We'll be adjourned.

(Proceeding concluded at 11:42 a.m.)

C E R T I F I C A T E

I, LAURIE A. ADAMS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 8th day of September, 2015.

s/Laurie A. Adams
_______________________________
Laurie A. Adams, RMR, CRR