**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_________________

| | |
|---|---|
| **United States of America,** Plaintiff, | ) No. **CR 14-0184-1-PHX-NVW** |
| vs. | ) Phoenix, Arizona<br>) January 15, 2015<br>) 11:14 a.m. |
| **Gordon Leroy Hall,** Defendant. | ) |

**BEFORE: THE HONORABLE NEIL V. WAKE, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**(*Final Pretrial Conference*)**

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**APPEARANCES:**

For the Plaintiff:

U.S. ATTORNEY'S OFFICE
By: **Lisa Jennis, Esq.**
By: **Monica B. Edelstein, Esq.**
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004

For the Defendant:

STEPHEN C. KUNKLE PLLC
By: **Stephen C. Kunkle, Esq.**
5150 N. 16th Street, Suite A222
Phoenix, Arizona 85016

P R O C E E D I N G S

THE COURTROOM DEPUTY: Criminal Case 2014-184-1 United States of America versus Gordon Leroy Hall. This is the time set for final pretrial conference.

Counsel, please announce for the record. 11:14:39

MS. JENNIS: Good morning, Your Honor. Lisa Jennis and Monica Edelstein for the United States.

MR. KUNKLE: Good morning, Your Honor. Stephen Kunkle on behalf of Mr. Gordon Leroy Hall. He's present and seated to my right, Your Honor. 11:14:44

THE COURT: All right. Good morning, counsel. And good morning, Mr. Hall. This is time set for pretrial conference.

THE DEFENDANT: May it please the Court, Your Honor?

THE COURT: No. You may not speak. You are 11:14:52 represented by counsel. If there's a matter of importance you can speak to your counsel and he can tell me.

THE DEFENDANT: Excuse me, Your Honor.

THE COURT: No. You are not to speak. You can speak through counsel. 11:15:06

Mr. Kunkle, is there a matter of importance that he should address the Court about?

MR. KUNKLE: Your Honor, I was -- I already alerted the staff that I think we may need to cover a few matters ex parte. I don't know if that's something he wishes to address 11:15:26

the Court at that time or not. He hasn't alerted me to anything specific.

THE COURT: We can do that after the pretrial conference.

All right. We'll continue then. 11:15:37

Now, I asked you this question, Ms. Jennis, but how long for this trial, for the government's case?

MS. JENNIS: I believe we would be done by Thursday, Your Honor. There is one -- we might actually be done earlier. We have discussed this with Mr. Kunkle that our expert witness 11:15:52 William Kerr, he's coming from the east coast. We're trying to get him here by the end of the day Wednesday. But if not, he can testify first thing Thursday. We don't anticipate his testimony being that long. He would be our last witness and we have 10 witnesses, Your Honor. 11:16:11

THE COURT: All right. Now, Mr. Kunkle, you don't have to decide now, but do you know if you are going to be presenting witnesses? Of course, the defendant himself gets to decide after the government's case.

MR. KUNKLE: I don't believe so, Your Honor. 11:16:28

THE COURT: All right. Now, counsel, my usual schedule is I start at 9:00. I go to 5. I take a 20-minute break in the morning, 20-minute break in the afternoon. Take a one hour break for lunch. The jurors usually tell me an hour is about right. They don't need more. I'm kind of 11:16:50

uncomfortable about less than an hour. I usually take the break around 12:15. Kind of evens out the morning with the afternoon a little bit. So we effectively get about six hours of trial time in a day.

Now, we can read the indictment or not. I read the indictment unless both sides stipulate to waive the reading of the indictment. So what's the government's pleasure? 11:17:05

MS. JENNIS: I personally like it read, Your Honor.

THE COURT: All right.

I have received your witness lists. And I'm sure you have already thought of that, but if any witnesses have time constraints please confer ahead of time with other counsel so we can accommodate witnesses to the extent possible. 11:17:24

And as to exhibits, about how many exhibits do you contemplate, Ms. Jennis? 11:17:59

MS. JENNIS: 29.

THE COURT: And please have a copy for me, for my convenience.

MS. JENNIS: We are making exhibit books for everybody. 11:18:09

THE COURT: All right. And those exhibits can all be marked the morning of trial, and you will have a list for us as well. And with respect to presenting exhibits to witnesses, before a witness takes the stand be sure to have let the clerk know and he will pull the exhibits that witness will be 11:18:35

questioned about and have them on the witness stand for the witness.

MS. JENNIS: And we do have three firearms, Your Honor. I have talked to Mr. Sommers about that previously. And then we have a large printer. 11:18:46

THE COURT: How do you plan on handling those?

MS. JENNIS: What we plan on doing is having an ATF agent. They are rendered safe, Your Honor, and we would have an ATF agent in the courtroom. And he probably would bring them up before the first witness who is going to bring them in. 11:19:05 And we actually may have all the witnesses who would talk about them in a row, and then when we're done with that we would take them back. I'm not sure how you do it for a jury. In the past, what I would prefer is if the jury wants to see the firearms then we would make it available for them to see. But 11:19:24 they wouldn't automatically go back.

THE COURT: Well, do you plan on bringing the firearms into the courtroom and presenting them during the trial?

MS. JENNIS: Yes, Your Honor. That's what I'm saying.

THE COURT: What's your plan? Do you want to have 11:19:36 them in the courtroom some period of time other than the time that they are presented in evidence?

MS. JENNIS: No. No. We can -- we have an area where they can be locked up prior for people's testimony who are not testifying about the firearms. There are three people, at most 11:19:57

three witnesses will be testifying about the firearms and I would only have the firearms in the courtroom during those three witnesses and also possibly during closing, Your Honor. But other than that, they wouldn't be in the courtroom.

THE COURT: And of course, they can go into the jury room. 11:20:13

MS. JENNIS: Yes. I would just prefer it be upon request so that the -- just so the ATF agent, make that person happy.

THE COURT: Well, that's fine with me. Unless the defendant has an objection, we can simply instruct the jury that the firearms will be made available to them in the courtroom if they request. All right. And the defendant can make that decision at the end of the trial. 11:20:26

And we have no pending motions, correct? 11:20:48

MS. JENNIS: No, Your Honor.

MR. KUNKLE: That's correct, Your Honor.

THE COURT: And I have your joint statement of the case. It's fine with me. Your voir dire questions are all fine. They -- I have some standard voir dire that I think is available to you all on my website. I will merge those into that and I will get you a copy. It will be essentially the same as what you have done with maybe a few additional ones. I will get them to you before -- no later than Monday so when we begin on Tuesday morning counsel will have the opportunity to 11:21:22 11:21:50

comment or request changes or any objection to anything I have given you as the final voir dire questions. But at most, it will be addition of a few of my standard questions in addition to all the ones you requested, which, as I said, are fine. I might rephrase some of your questions a little bit, but they won't be substantively different. 11:22:08

Now, for the voir dire, I rather doubt this is case in which jurors are asking us to have discussions out of the hearing of the other panel members, but I will advise them if they wish to do that we will do that. And when we take a break we will hear from any panel members who want to answer a question without everyone else present. 11:22:35

I very rarely will ask to excuse a juror for cause in the presence of counsel, unless I see a juror is disqualified, like they work for the U.S. Attorney's Office or something. And the reason I don't want to do that is I don't want to put the lawyers in the spot of having to say in front of the jury whether they are objecting or not objecting to a juror. Sometimes I do it. If I am 100 percent confident I will ask you. If I see a juror making speeches I think are prejudicial or I otherwise think that juror is disqualified I may do that. And, of course, if I do that and you don't want to excuse the juror, you have to say that. But I try very hard not to put you on the spot of saying that in the presence of the jury. 11:23:10 11:23:24

So how many -- we have a jury of 12 plus how many 11:23:44

alternates? What do you suggest, Ms. Jennis?

MS. JENNIS: Two, Your Honor.

THE COURT: Mr. Kunkle?

MR. KUNKLE: That sounds reasonable, Your Honor. In my discussions with the government I think we'll be done in a few days, so two sounds perfectly fine. 11:23:57

THE COURT: We could probably get by with one alternate but we'll do two. And that means I think the government -- both sides get one extra strike, so that's seven strikes for the government, 11 strikes for the defendant. So we need a total at the end of the day of 32 jurors. 11:24:17

Nick, am I right on those calculations?

THE COURTROOM DEPUTY: 32.

THE COURT: Now, I already had to, because we're so close to the trial, I had to inform the jury office how many people to call. So I told them to bring 50. That's probably -- we might do with 45 but I thought 50 would be enough. Anybody think we need more than 50? 11:24:35

MS. JENNIS: Your Honor, I will let Monica Edelstein talk to this. 11:24:54

MS. EDELSTEIN: Judge, to the extent the IRS is involved in this case, to the extent the money orders at issue were sent to the IRS, as you can see from the voir dire questions we have those additional probing questions with regard to feelings about that particular agency. 11:25:09

THE COURT: I guess that's right. And we have the firearms, too. So what's your experience, Ms. Edelstein? How many people are really not good jurors for the IRS?

MS. EDELSTEIN: Considering, Judge, that this is going to be a particularly short trial, I don't think -- I think maybe an additional 15 to 20 over that 50. 11:25:25

THE COURT: That's a lot. You want 65 or 70? I mean, what's your experience with people who have said they can't sit on the case with the IRS.

MS. EDELSTEIN: The last trial, Your Honor, I had we also anticipated would be two weeks. We called in, if I'm not mistaken, 75 jurors in that case. We had at least three that were excused. 11:25:44

THE COURT: See, this is a very short trial. So with two weeks you are going to lose a lot of people. But if you only had three people who said I can't be fair to the IRS, that's not all that bad. 11:25:58

MS. EDELSTEIN: I'm comfortable that we would easily be able to empanel a jury with 50 if not five or six more.

THE COURT: The firearms is an issue, though. Sometimes we have people who have strong feelings about firearms. 11:26:16

MS. JENNIS: I have not had an IRS trial. I have had many firearms trials. I have not found actually that to be an issue. 11:26:28

THE COURT: I have had some where we just went on and on. If we have 50, we can lose 18. We will lose some for hardship. Frankly, when we had to do this beforehand because we were so close to the trial and I couldn't wait to talk to you, and I thought 50 would be plenty. Another thing I can do 11:26:53 on a worst-case scenario is I can break it down to one alternate instead of two.

MS. JENNIS: I think due to the length of the trial, Your Honor, that we should probably be fine because it's not -- I think the longer the trial, obviously people are going to 11:27:13 have more hardships. But due to the length of the trial, I do believe we would be completed by Thursday, so just be Tuesday, Wednesday, Thursday, that 50 should be adequate.

THE COURT: I think I might have problems having the jury people increase that by now, so I think we'll just go with 11:27:30 the 50. It may mean I have to be a little stricter with excuses for hardship. Typically, if anybody wants out and counsel don't object, I let them out on the theory that lawyers usually don't want somebody here who doesn't want to be here.

And most of the hardships are sufficient. Every once 11:27:52 in a while there's some that no, they wouldn't be sufficient if anyone objected to the objection. So all right. We'll go with 50 then.

Thank you for the draft jury instructions. I'm not seeing that -- it appears to me that all of them are agreed 11:28:15

jury instructions. Is that correct, Mr. Kunkle?

MR. KUNKLE: Your Honor, yes. And there may just be one issue on the 514. The two counts in the indictment, four counts in the indictment, I'm sorry, under Section 514.

We discussed it briefly the other day. I think the jury instructions are adequate as they are now. I would just ask the Court, we may have to come back to you at some point next week because I have been somewhat pressed for time. But I think those instructions as drafted by, I think, Ms. Edelstein drafted them, I think they are sufficient to explain under 514. And I would just ask the Court, to the extent you review them, there's one case that really seems to govern, and it's the *Howick* case. I think we all agree on that. I don't know if Ms. Edelstein cited them.

THE COURT: The instructions read well to me.

MR. KUNKLE: They seem to be fine. I would just ask the Court if I realize we missed something we may have to supplement them or redact something because it's a statute that doesn't get charged a lot. There's not a lot of case law on it.

THE COURT: Tell you what. I want to come back to this discussion after I finish my preliminary list because I did have one question about the instructions.

MS. JENNIS: I have another point on the instructions.

THE COURT: We'll talk about the instructions in a

minute. Let me just finish my list.

Anybody invoking the Rule of Exclusion of Witnesses?

MS. JENNIS: Yes, Your Honor, except for the case agent sitting at the table.

THE COURT: All right. And who will be your case agent with you at counsel table? 11:29:39

MS. JENNIS: I'm sorry. It would be Kathleen Neri. We were having a discussion.

THE COURT: Is she an IRS agent?

MS. JENNIS: Yes. 11:29:59

THE COURT: All right. Now, with respect to sidebars, discussions at sidebar, I really want to keep those to a minimum. If counsel anticipate any issues, please try to make of them ahead of time so we can discuss them before or after the jury is here. 11:30:17

Now, there is the issue of discussions at sidebar if we do them and whether the defendant wants to be present at the sidebar discussion or whether the defendant will waive his right to be present at the sidebar discussion. If he doesn't want to waive that right, that means we can also excuse the jury if we have to have a discussion. 11:30:40

So Mr. Kunkle, have you talked with Mr. Hall about whether he wishes to waive his right to be present at a sidebar discussion?

MR. KUNKLE: That specific topic? No, Your Honor. We 11:30:51

have not had that discussion.

THE COURT: I will tell you what. I'm going to leave that with him and if he does wish to be present, my disposition is simply to excuse the jury from the courtroom.

Now, we will be particularly conservative about allowing sidebar discussions. And so -- all right. As I said, the last time we were here, if there is any disruption in this trial I am making arrangements to have an audio connection into the cell. I am not anticipating any disruptions, but if there are disruptions there will only be one and they will not cause a mistrial. And we will continue the trial if there is a disruption, Mr. Hall, with you in the security room there. And I will make arrangements to have a second lawyer present so at all times while hearing examination he can confer with another attorney and at the close of every witness's testimony I will allow to take a brief recess to allow both counsel and the defendant to confer about questioning that witness. I'm not anticipating that happening. That's what I have done in the past. I will do that if there is any disruption.

Now, with respect to the closing arguments and the jury instructions, we can -- I can do the instructions first and the closing arguments next or the closing arguments first and instructions next. I ask counsel what your preference is.

Ms. Jennis?

MS. JENNIS: Your Honor, I always prefer that you do

the instructions first. Because that way the argument can be based on the instructions you have already given.

THE COURT: Mr. Kunkle, what's your preference?

MR. KUNKLE: That works fine as well, because I agree with Ms. Jennis. I think it helps the jury understand the arguments better. 11:32:53

THE COURT: I agree with that as well. But if there is a disagreement in a criminal trial, I do it however the defendant prefers. So since you are in agreement we'll do the instructions first. 11:33:08

The verdict form you prosed is the way I usually do it. It looks fine. And again, try to --

MS. JENNIS: Your Honor, did we do a proposed verdict form? I don't believe we did.

THE COURT: I have one that is maybe one my staff did. 11:33:24 That's the way I usually do it. So we'll give you all a copy.

MS. JENNIS: Probably for the last count, and I don't know what -- the verdict form is probably fine, except the last count because there are three firearms, I would make it a special verdict form in that the jurors would have to vote 11:33:45 unanimously for each firearm.

THE COURT: Good point. And my verdict form just says, quote, "We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths, find the defendant, Leroy Hall," and then we have each count for willfully making 11:34:04

fictitious instruments as charged in Count 1, not guilty, or guilty. And then we repeat that for every count with the description and the nature of that count. Actually, we will have to redo that accordingly to have one for each.

Now, with respect to the firearms, good point. 11:34:25

MS. JENNIS: If you could send it to us, we can -- maybe Mr. Kunkle and I could work on it together and submit it to you based on what you have already drafted.

THE COURT: We'll do that. I do want to break out each one separately. And e-mail that to counsel and invite you 11:34:43 to suggest a form that allows the jury to make a finding with respect to each of the three firearms.

MS. JENNIS: And then I don't want to interrupt Your Honor, but I do at one point need to discuss the criminal forfeiture, because it is a bifurcated proceeding. 11:35:01

THE COURT: Oh. Okay. I will come to that in just a minute.

Again, please do all the examinations from the podium. With respect to objections, just state your objections summarily. No speaking objections unless I invite discussion. 11:35:51 And Mr. Kunkle, on cross-examination, I allow wide open cross-examination of witnesses so you -- I have the discretion. That's how it's done in state court. I think that's better so we don't have to call witnesses back unless you elect to call the witness in a defense case. 11:36:20

Now, in opening statements be careful to describe what the evidence will show. Be careful about vouching. This is -- the way we speak, we are always saying, "I think." Well, that's vouching. So if that happens more than once I will catch it the next time. I know you all don't mean any ill will, but it just happens so often. Try to be careful about it. 11:36:45

And Ms. Jennis, I want you to let the other side know at least 24 hours in advance what witnesses are going to be called in what sequence so he can prepare. Same for you if you call any witnesses, Mr. Kunkle. 11:37:07

And again, if you anticipate any problems, please bring it up ahead of time so we don't have to take jury time to discuss matters that would keep them waiting.

All right. Now, Ms. Jennis what about the forfeiture? 11:37:34

MS. JENNIS: There is a forfeiture allegation in the indictment. And how a criminal forfeiture can work is in different ways. I have had trials where you have -- where the defendant is convicted and then the judge decides the forfeiture and that's something that's agreed to by the defendant, or it goes to a jury. So when I say bifurcated proceeding, what I mean is the jury's got to come back, give their verdict on the counts in the indictment, then we go, hey, we have a forfeiture trial. And we would have another instruction for the forfeiture. 11:37:55 11:38:11

I can't -- I anticipate that that would be very brief because it's just as to the one count and the three firearms so you kind of know, because we have a special verdict form for the guilt.

One thing that Mr. Kunkle and I just kind of figured out is, maybe -- even though we would like the indictment read, I don't believe it would be necessary to read the forfeiture allegation. I would just read the counts. 11:38:27

THE COURT: Mr. Kunkle, do you agree to that?

MR. KUNKLE: Yes, sir. Yes, sir. And with respect to the forfeiture allegation, Your Honor, being decided by the Court as opposed to the jury, I believe it would be incumbent that the jury will have to decide that. If that changes, obviously, I will let the Court know. 11:38:41

MS. JENNIS: And so the United States is working on an instruction or actually there would have to be an instruction for the forfeiture. We have prepared them. We haven't showed it to defense counsel yet. But that would be something additional that would occur after the verdict in the criminal part. 11:38:57 11:39:14

THE COURT: Well, is there a reason why we couldn't just include that in the principal trial and include forfeiture instructions? I have never encountered this. I have never had anyone who wanted to have the jury decide this, but that's fine. 11:39:40

MS. JENNIS: We could, Your Honor, include it. We just have to modify it a bit.

THE COURT: Is there any prejudice to the defendant in unfolding that because it seems to me the evidence on that is exactly the same evidence that's going to be -- 11:39:53

MS. JENNIS: That's why I said it would be brief. I'm not sure I know all the answers to those questions. But that's certainly something we could look at. I anticipated it would be a jury versus a judge in this particular case. And I know it has to be bifurcated, and I'm not sure if the bifurcations 11:40:09 would apply in the jury instructions.

THE COURT: Why does it have to be bifurcated?

MS. JENNIS: That's required, I believe, by statute.

THE COURT: I'm not familiar --

MS. JENNIS: Unless the defendant agrees that it can 11:40:21 be decided.

THE COURT: So it's the defendant's election how to proceed. Well, then, that answers my question. The defendant can tell us how he would prefer to proceed.

MS. JENNIS: Also, Your Honor, one more point. In 11:40:32 order to get to the criminal forfeiture you have to have the guilt first. So that's why it's bifurcated, because you don't even get to the second part if you don't meet the first part. And there's also a different burden for a forfeiture. It's preponderance of the evidence as opposed to beyond a reasonable 11:40:49

doubt.

THE COURT: Well, the issue -- I would like to have those instructions. And I'd like to have them resolved before we begin the trial, the substance of them, which means here we are on Friday -- on Thursday. 11:41:05

MS. JENNIS: We pretty much drafted them, Your Honor. I can send them to Mr. Kunkle this afternoon and we can get back to you ASAP.

MR. KUNKLE: I don't anticipate that will be anything that -- 11:41:18

THE COURT: Tell you what. I am totally tied up tomorrow, but if you all can exchange them and let me know by Monday morning whether you are in agreement on the form of the instructions. If you are, that's fine. If you are not, just submit your competing forms, the usual statement of your 11:41:34 objection. I will look at them and I will try to resolve it on Monday so before you start the trial you will know what my determination is on those instructions.

MS. JENNIS: Would you like us to file it? I know it's a holiday. 11:41:50

THE COURT: Monday is a holiday?

THE COURTROOM DEPUTY: Martin Luther King day.

MR. KUNKLE: I think this is something Ms. Jennis and I will be able to work out by tomorrow.

THE COURT: Get it in to me by the end of business 11:42:02

tomorrow.

MS. JENNIS: Do you want us to file it or just e-mail it?

THE COURT: E-mail would do -- actually, if you have a disagreement. 11:42:14

MS. JENNIS: We'll file it. If we don't, we'll e-mail it.

THE COURT: Yes. Yes.

MS. JENNIS: I guess Mr. Kunkle needs to decide if his preference is if it is included in the jury instructions. 11:42:24

THE COURT: The issue is whether to bifurcate as you just described. And in terms of -- I guess I really would like you to make that election. Confer with your client. And since Monday is a holiday, I really -- I guess I need to have you let me know by the end of tomorrow whether you want to have that 11:42:46 instruction and deliberation folded into one or have it bifurcated to have the jury deliberate on the forfeiture after they have returned a verdict, and, of course, only if they have returned a guilty verdict on Count 5 would we reach that.

MS. JENNIS: And again, Your Honor, you are correct in 11:43:08 saying there won't be any additional evidence done. All it would require if the defendant was convicted is to read some more instructions and have them do a verdict form.

THE COURT: Which would be a reason to simply fold it all into one instruction with one set of deliberations. But I 11:43:24

take you at your description, Ms. Jennis. It's the defendant's election, so we'll do it however the defendant wishes to proceed. If we're going to bifurcate, though, I do think I need to tell the jury of that possibility because people hate surprises. If they come back with a verdict and then I tell them, oh, by the way, there's some more, we're going to have some unhappy people. So I want to be able to tell the jury in advance what task they may be charged with in what circumstances. 11:43:47

So just let us know by the end of business tomorrow, Mr. Kunkle, what the defendant's election is, and I will be in a position to tell the jury on Tuesday morning when we describe this case for them. 11:44:03

Now, you all didn't have any voir dire questions about firearms, did you? That's fine with me. I have some where we asked the jury if they have strong feelings about firearms that would prevent them from being a fair and impartial juror for you decide. I'm happy to ask that. I have got those questions somewhere. 11:44:37

MS. JENNIS: That sounds like a good question, Your Honor. Thank you. 11:45:02

MR. KUNKLE: There's no objection, Your Honor, from over here.

THE COURT: Cullen will find those and reuse those. They are very straightforward questions. 11:45:12

Now, let's go to the instructions. I did have one issue about the instructions and that is I anticipate the possibility of jury confusion between Counts 1 and 2 and Counts 3 and 4. So I'm wondering if we can make more clear how they relate. Ms. Edelstein. 11:45:45

MS. EDELSTEIN: Yes, Your Honor. Subsection 1 is the actual making or creation of the fictitious instruments. It criminalizes any act that is part and parcel of producing the document itself, the instrument.

The second prong, the (a)(2) is a wholly separate 11:46:02 crime by statute which is the passing, the using, the uttering, the term uttering is used within the statute and is defined within the instruction.

Your Honor, I do anticipate that there will be some information provided in opening and very likely in closing that 11:46:21 highlights that particular element being the difference between those two elements which may address some of the Court's concern.

Additionally, Your Honor, other than those two prongs, the first prong of each one, they are substantially the same. 11:46:37 The writing of the statute is substantially the same. There are very, very few instructions and even fewer court cases that directly relate to the jury instructions for this particular charge, the 514. But the *Howick* case in the Ninth Circuit is pretty well on point and goes into depth with respect to the 11:46:56

definition of a few of the key terms. We included those.

THE COURT: Have you all cited that case in your instructions?

MS. EDELSTEIN: Yes, Your Honor. It's cited in the last two -- the two instructions related to (a)(1) and (a)(2) of 514. 11:47:08

THE COURT: I see. Well, this may be a situation which opening statements and closing arguments in particular can make clear of the relationships and avoid what would otherwise be pretty natural jury confusion. Do you see it any differently, Mr. Kunkle? 11:47:35

MR. KUNKLE: I don't -- I think since the counts spell out one is making and one is using, I think that's the best way to differentiate the counts, Your Honor. Perhaps when the Court instructs the jury, you can say these instructions apply to these counts; these instructions apply to these even though there's overlap. 11:47:54

THE COURT: For the sentencing purposes they are be grouped?

MS. JENNIS: Yes, Your Honor, they will be. 11:48:06

THE COURT: All right. I don't have any other questions about the jury instructions.

And the government has filed its notice of intent to offer self-authenticating documents so the defendant is on notice. I am not anticipating any issues but if there is let 11:48:29

me know, Mr. Kunkle.

Expert testimony, is there any issue about the government's expert testimony, Mr. Kunkle?

MR. KUNKLE: None that I can foresee.

THE COURT: I didn't see anything either, but if there is I wanted to be able to address it. 11:48:41

And all right. And we also have the government's notice of intent to use the defendant's statements. There's been no request for any pretrial matters on that.

All right. I think that's everything on my list. 11:49:14

THE COURTROOM DEPUTY: Picking the alternate jurors.

THE COURT: Oh. The method. Yes. Right. Right. Right.

As you all know, the federal rules call for the alternates being the last person selected and separate strikes for them. 11:49:37 It's pretty common practice here for counsel to stipulate to do the alternates the way it's done in state court in which all of the alternate -- all of the strikes are pooled and the alternate is selected by lot at the end of the trial. We only do it that way if everybody stipulates to do it that way. 11:49:58 Otherwise we do it the way the federal rules provide. So Ms. Jennis, what's your preference?

MS. JENNIS: I like when you pool it, Your Honor, and they are random choices.

MR. KUNKLE: Your Honor, my experience in New York was 11:50:12

always that the alternates were the last ones on board. I came here, we started doing it by random in Arizona. I like that method. I think it keeps them paying attention. I have no objection to doing that, Your Honor. Insofar as I can stipulate to that, I will do that. 11:50:31

And then I will bring up another matter related to that momentarily with the Court.

THE COURT: I also am of the view that counsel have more flexibility in the use of the alternates and it benefits both sides, especially the defendant, to have that flexibility 11:50:51 in doing it the way that you both stipulated to do.

MR. KUNKLE: Your Honor, Ms. Jennis just reminded me of one other thing in terms of the firearm counts, or count. We had discussed briefly the case of *Old Chief versus United States* in stipulating to Mr. Hall's prior convictions that 11:51:11 would render him a prohibited possessor or felon who is not permitted to possess firearms.

The case law, such as it may be, and the Supreme Court ruled on, if there is a stipulation to that effect that the practice would be to have that accepted so that the prejudicial 11:51:35 information about the conviction wouldn't come before the jury, and that wouldn't be read in the indictment, it would be redacted out and the jury would only decide the simple question whether he possessed the weapons or not because the stipulation obviously takes that element of being a felon in possession of 11:51:50

the crime. I have proposed a stipulation of that nature to Ms. Jennis.

I believe it's something, again, we can work on very quickly this afternoon if Ms. Jennis is inclined to accept that. Now, I just put this out with the caveat, and I know I just stipulated to the random selection of the alternates. And I believe as Mr. Hall's counsel, this also goes to the self-authenticating documents, again, that I'm authorized, and I shouldn't say authorized by him, because that's an issue I would like to take up with the Court ex parte in a few moments. But I believe that's the best course I can follow on his behalf. 11:52:05 11:52:25

THE COURT: That is that you intend to stipulate to that in lieu of requiring the government to put in direct --

MR. KUNKLE: Right. 11:52:39

THE COURT: -- documentary evidence of the convictions.

MR. KUNKLE: And I understand Ms. Jennis is prepared, and obviously she has witnesses here at the trial who would know of his prior convictions that he did serve prison time. We're anticipating his daughter, Shannon, testifying against him. But she also has a certificate of conviction which would be introduced to the jury. And again, the nature of those convictions is irrelevant to whether -- so we would have to somehow sanitize that out if we want the convictions. But I 11:52:46 11:53:04

believe it's my best strategic move and tactical move to stipulate to that. So I believe if we have a stipulation to that effect and the government is amenable to accepting the stipulation, I think there is no reason why they wouldn't because it be would be highly prejudicial otherwise. That may change the jury instructions. That may change what we read in the indictment. But if we do get there, I will submit right now I will stipulate to that orally and if you need it in writing I will do it in writing. 11:53:22

THE COURT: Ms. Jennis, are you accepting that? 11:53:35

MS. JENNIS: Oh, of course I'm accepting of that, Your Honor. Definitely. Then we would have to redact the indictment to take out because it does mention the type of conviction.

MS. EDELSTEIN: Your Honor, the jury instruction itself was written with that in mind and there is an or provision so there is a provision of the joint proposed jury instruction that leaves it just merely saying that there's a -- and defendant has stipulated to. 11:53:48

THE COURT: Well, I have no difficulty in agreeing that it's defendant's advantage to so stipulate. 11:54:01

MR. KUNKLE: And, Your Honor, I think we can work that out in the instructions and the stipulation to file it in writing. I just -- my position is that the jury doesn't even hear he's a felon, they just decide the simple question whether 11:54:16

he possessed the weapons or not.

THE COURT: Well, no. No. Hold on. I understand why you would want that, but I didn't understand that I was asking Ms. Jennis to agree to that.

MS. JENNIS: Oh, I'm sorry. I was just only agreeing that we wouldn't prove up the type of conviction. 11:54:29

THE COURT: That you would stipulate that he has --

MR. KUNKLE: A conviction.

MS. JENNIS: A felony conviction, Your Honor.

MR. KUNKLE: I stand corrected, a felony conviction. That's the only kind of conviction makes him a prohibited possessor. But the reason that is, is that takes an element away from the jury's consideration. 11:54:40

THE COURT: Here's the problem. It's not a crime to possess a firearm. It's only if you are a prohibited possessor, and the only one I know of is a convicted felon. Actually, illegal alien too. 11:54:55

MR. KUNKLE: There's many other grounds upon which you can't possess, whether you are subject of an order of possession, domestic violence offense, under indictment somewhere else. 11:55:09

THE COURT: Tell me exactly what you are proposing, and Ms. Jennis, listen carefully. If you don't want to decide now if it's new, you can think about it.

MR. KUNKLE: The jury would only be deciding whether 11:55:22

or not he possessed the weapons. They wouldn't hear that he's a felon. They would not hear of prior convictions. They would simply be tasked with the decision in their verdict form to decide whether or not he possessed the weapons that were found. It takes away the consideration of them even hearing that he was a prior felon. 11:55:40

It just makes it a cleaner trial. It prevents a lot of --

THE COURT: Have you actually had cases where it was done that way? 11:55:53

MR. KUNKLE: No, Your Honor, not in federal court. But I know there's different law in state court. And our practice, I used to be an assistant DA in New York City, we would always in an indictment presentation to agree --

THE COURT: When did you practice in New York? 11:56:06

MR. KUNKLE: Do I have to tell you? It was a long time ago. I might have to reveal my age. It was back in the early '90s, early '90 through '96. I worked for Robert Morgenthau there.

THE COURT: Chuck Schumer was my law school classmate. 11:56:20 We were friends, but he was friends with everyone. And he was. He was a genuinely personable guy, made friends with everyone. Still is. I digress.

MR. KUNKLE: I would just put forth to the Court, Your Honor, that in terms of stipulating to the felony conviction 11:56:42

not just what the nature of the conviction was but that is a felon, then the jury wouldn't even hear -- there would be no evidence necessary, no certificate of conviction would come in. We would probably put that, incorporate that into the stipulation that just changes the instructions on possession. 11:56:59 With all candor to the Court, no, I have not had this occasion arise in federal court. And when I broached this the other day with Ms. Jennis, we were discussing -- I don't want to speak for Ms. Jennis -- but how that mechanically works in a jury trial, my estimation is very simple. The jury is to decide 11:57:15 whether or not he possessed the weapons.

THE COURT: Have you resolved that in your mind, Ms. Jennis, as to whether you want to agree to something like that?

MS. JENNIS: I thought our discussion was just whether the type of felony was going to be presented, and because he 11:57:32 cited, Mr. Kunkle and I discussed, the *Old Chief* case. Of course, it is a constitutional right for people to bear firearms, therefore, I think it is extremely important that the United States be able to prove that the defendant was a felon. I think the case law is very clear and it says the United 11:57:58 States would be wrong not to agree not to prove the felony if that's what the defendant -- if that was the defendant's wishes.

Now, we have every right to prove the felony if he doesn't wish that. If that's what he wants and he doesn't want 11:58:16

the type of conviction to come in, then the United States is all right with that.

THE COURT: That seems right to me that if he can stipulate he is a convicted felon that satisfies the element of the crime. But Mr. Kunkle is asking for -- is proposing more than that. 11:58:28

MS. JENNIS: Right. And I oppose that, Your Honor.

MR. KUNKLE: And, Your Honor, if I may. I think this is something we'll be able to work out upon conferring. I may stand to be educated on that. After Ms. Jennis spoke it somewhat made more sense to me. I'm not saying I agree with her. But there would be that open issue that if there wasn't the status afforded the jury on some level they may be left to guess and speculate. 11:58:42

So I can promise the Court this: I will look at the law on that confer with Ms. Jennis this afternoon and we'll let the Court know. But I believe we have a stipulation at a minimum about the nature of the felony. If I'm right, and I can convince Ms. Jennis I'm right, which I doubt, but -- 11:58:57

THE COURT: Let's see if we can make a clear record here, because it helps everyone to be able to rely and plan and go forward. I'm taking it that the defendant is stipulating in a binding way that the jury, at a minimum, will be instructed that he stipulates he is a convicted felon and the government will not have to prove that. 11:59:16 11:59:36

MS. JENNIS: No, I believe he is asking us -- he is asking us not to prove the type of felony.

THE COURT: We're talking about two distinct things here.

MR. KUNKLE: Yeah. 11:59:54

THE COURT: One is the stipulation that he is a convicted felon, and perhaps even requires more than a year sentence.

MR. KUNKLE: Correct.

THE COURT: Whatever the statute requires without 12:00:06 identifying the specific offense of conviction, that he is stipulating to that. And that would spare the government having to present it.

He is putting on the table, and we're not resolving, an additional suggestion that the government agreed that he 12:00:22 just -- the jury be instructed that the offense is possession of a firearm by a prohibited possessor and he is a prohibited possessor, that's a different proposal and we're not resolving that now. So far I have heard Ms. Jennis say she is not disposed to accept that. 12:00:43

But I do want to have it clear whether the government needs to bring witnesses to prove the conviction. And so I'm disposed to accept and hold everyone to at least the first level of stipulation now so the government can rely on that.

MR. KUNKLE: If Your Honor, if you could indulge us, 12:01:03

if we can have an opportunity -- especially so I can look a little further into the issue on stipulation. You are absolutely correct of the nature of the felony being stipulated to I think we all agree on that. Whether there's a fact of a felony conviction or the jury just be charged that he is a prohibited possessor. 12:01:18

THE COURT: She's not agreeing to that.

MR. KUNKLE: I know, but I will look further into that to see if there's any support for what I'm proposing. I will discuss that with Ms. Jennis and we can let the Court know hopefully no later than tomorrow whether we disagree or don't agree. And again, this may all be moot by other factors outside of my control. 12:01:32

THE COURT: All right. Now, just -- again, I am -- I think I am repeating myself, Ms. Jennis. I do want to make a clear record that you are accepting the stipulation that he's a convicted felon of a necessary length of sentence without identifying the nature of the offense, and that that will then spare the government having to prove that. 12:01:46

MS. JENNIS: Yes. 12:02:08

THE COURT: All right. I am accepting that stipulation. Everyone is held to it. No one may back out of it at this point. To back out now would prejudice to the government because they now can dispense with their witnesses that they are planning. 12:02:22

Now, is there anything else?

MR. KUNKLE: Your Honor, I had alerted your staff I think there's a couple minor matters we need to take up ex parte. I apologize to my colleagues from the government.

THE COURT: That's fine. I don't know what they are. But I am just wondering whether it's prudent, Ms. Jennis, for you and Ms. Edelstein to remain outside while we discuss those ex parte matters. I don't know what they are or whether they require further discussion with you. Do you have problem remaining? 12:02:37 12:02:55

MR. KUNKLE: Before we begin that, Your Honor, last, and this will also be brought up again probably. But Ms. Jennis and I discussed, obviously, we had mentioned this last week when we were before you. There was a plea agreement on the table. In fact, there was more than one or two, and you mentioned last week. Ms. Jennis had communicated to me the government's determination as of Monday to pull any plea agreement if the government had started preparing for trial. We met last Friday on the 9th, and I saw Mr. Hall and I had not informed him that the government had intended to pull the plea offer once trial preparations began in earnest. And obviously -- and I will delve into this a little more briefly if the Court would so allow me when we meet ex parte, if necessary. And, of course, Your Honor indicated you would not entertain any plea agreements beyond a certain date, which I 12:03:15 12:03:44 12:04:09

believe was yesterday.

THE COURT: Yes.

MR. KUNKLE: And I think that that was communicated last week to Mr. Hall.

Now, to the extent I was able to communicate to Mr. Hall consistent with my obligations under the ethical rules in *United States versus Burlock*, I want the record to be abundantly clear, I did take him that plea offer. Now, I think with Ms. Jennis, and what we need to do out of abundance of caution, and I would hope this is why earlier you were doing your other hearing, I didn't realize you were talking to me asking about going to trial. I was kind of back there half listening. Civil cases bore me.

But Ms. Jennis, I think, wants to put a few matters on the record concerning the plea offer. And in short, it is a favorable plea as we mentioned last week with concurrent time. But I think it's incumbent on Mr. Hall to hear what he's facing both in terms of statutory maximums and what the plea offer may have been or what it was depending on if lightning would strike again.

THE COURT: I will invite Ms. Jennis to make the record of what was offered and also the record that you have communicated it Mr. Kunkle, and that it was declined. If, in fact, the offer does remain open and Mr. Kunkle -- you are Mr. Kunkle -- Mr. Hall, if Mr. Hall wants to accept something now I

will hear that request.

Please proceed.

MS. JENNIS: Your Honor, the plea offer hasn't really changed. And the basic premise of the plea offer is that the defendant pleads to two counts, neither of which are the gun count, and he gets concurrent -- it's a stipulation for concurrent time, which means, for the defendant's sake, that the 188-month sentence that he is currently serving, any sentence he were to receive in this case would be at the same time as he is serving the sentence from South Carolina. 12:05:53 12:06:16

THE COURT: What's your estimate of what the guideline range would be for convictions in this case?

MS. JENNIS: It's very difficult to estimate. And Mr. Kunkle and I have spent some time looking at it because there is some relevant conduct that the Court would have to decide. 12:06:35

So worst-case scenario, and I don't even know if I can say worst-case scenario because there might be enhancements that we did not agree. That we did not anticipate.

I believe that we could make the sentences as approximately the same time. The defendant is a high criminal history category as you can imagine, since he has at least the conviction from South Carolina and the prior conviction. So due to that, it really bumps everything up in the guidelines. We're hoping -- I also gave a stipulation to cap at the low end. We could keep him somewhere around 151 months, and he's 12:06:59 12:07:26

serving 188 months.

THE COURT: So part of your offer was not just a recommendation but a cap at the low end?

MS. JENNIS: A stipulation for a cap at the low end because we thought the sentence would be so high. But the goal was and has always been to try to not exceed the 188-month sentence that he's already serving. 12:07:42

Obviously, if he goes to trial, it's in the Court's discretion -- and he's convicted, of course -- it's in the Court's discretion whether it has to be a concurrent or consecutive sentence. There is no mandatory nature of these charges that you would have to do a consecutive or it would have to be concurrent. But again, that would be up to the Court's discretion. 12:07:59

The plea agreement, I guess, would take that discretion away if you were to accept the plea agreement and allow the sentences to run concurrent. 12:08:15

THE COURT: I want to make a clear record. And I understand what you have said, that there's difficulty in protecting what the guideline calculation would be. But I'm hearing you say that one serious possibility is that even if there were concurrent sentences, if the sentence were not at the low end it would be more than the other sentence in South Carolina. 12:08:31

MS. JENNIS: It would be close, Your Honor. Also the 12:08:53

benefit of the plea agreement is obviously you get three levels off. Without that three-level reduction, it is probable that any sentence, if the Court were to see the relevant conduct the way the United States proposed, that could change everything if the Court didn't, it could actually exceed the sentence he's already been serving. Because he's been in custody, I believe it will be two years in March. I believe he was arrested March 14, 2013. So there's some things that are decided by the Bureau of Prisons and is not in our hands. So the major, major benefit of the plea is the concurrent time. 12:09:11 12:09:37

Also, I'm not 100 percent sure that the gun charge would be grouped with the 514 charges. I'm confident in saying the 514 charges, the four counts, would be grouped. I'm not as confident saying the gun charge would be grouped with those. So if that happened and he went to trial and he would be looking at a maximum sentence of 25 years on the 514 charges followed by a potential consecutive term of up to 10 years for the gun charges. I don't believe 10 years would be his guidelines, but it could potentially be a consecutive sentence. 12:09:56

So due to the nature of the fact that there's no way to know whether he's going to get a concurrent time or consecutive time, that's the massive benefit of the plea agreement is the concurrent time and the dropping of the gun count. 12:10:21

THE COURT: And just again, I just want to make a 12:10:37

clear record, has that offer expired? Has it been rejected.

MS. JENNIS: I originally gave a deadline of Monday, last Monday, to Mr. Kunkle. I am willing to extend it pretty much to today because I don't believe that Your Honor is even available tomorrow. So it would be based on Your Honor's 12:10:58 availability. Whatever Your Honor said would be okay with the United States. But --

THE COURT: Well, I am available later today and I think my deadline was yesterday.

MS. JENNIS: I don't recall. I think it was today. 12:11:18

THE COURT: No, it's today. So my deadline -- again, let me explain, Mr. Hall, the Court is not involved in negotiation or your decision making whether to accept a plea agreement. The government has the exclusive right whether to offer a plea agreement and what the terms will be. Nothing 12:11:41 that I say or do should be taken as suggesting anything about the plea agreement whether you should accept it or not accept it. I have been asking some questions to make a clear record here about what was offered. None of these questions are intended and none should be taken as even implying whether a 12:11:59 plea agreement should be accepted or not accepted. I have set my own deadline. I am also careful, I will make exceptions if there's any reason that my deadline would be unfair to the defendant or unfair to the government I will extend it.

So I am available later today if there were a decision 12:12:21

to accept a plea agreement today, to take a change of plea. I am not available tomorrow but a magistrate judge could take a change of plea tomorrow.

MS. JENNIS: If I may say one more thing, just for defendant's clarity, because you had mentioned in a previous 12:12:37 hearing that a defendant can always plead straight up. If that were to happen, it would be similar to a guilty plea other than the two levels he would get off. So he still would be looking at a possible consecutive time, a longer time because he wouldn't get the full three levels off. I just want to make a 12:13:01 record for the defendant's sake because you did mention previously if someone comes in the day of trial and pleads to the indictment, he still would have the same problem of potentially the gun charge not being concurrent time with the 514 charges and he wouldn't get the benefit of the extra point 12:13:22 or concurrent time.

THE COURT: Mr. Kunkle, is Ms. Jennis's description accurate? Has all of that been communicated to Mr. Hall.

MR. KUNKLE: Your Honor without getting too far afield into confidential attorney/client communication, I, as I told 12:13:40 the Court last week I have been doing this a long time. I have, how should I put this, attempted to communicate not only the first plea offer, which is why you have already heard a previous motion from me. That was one basis, to Mr. Hall. I know he's sitting here now, I know I went again on Tuesday. I 12:14:08

believe I met with the government and Ms. Jennis's agents on Monday. We had a brief meeting over at the U.S. Attorney's Office and I informed Ms. Jennis I had not probably adequately conveyed the fact that the government would pull the plea offer, but that also came at the tail end of the fact that this 12:14:31 wasn't the first time --

THE COURT: But now she has extended the plea offer through today.

MR. KUNKLE: I even -- I don't think this would be revealing too much, I just attempted to communicate with Mr. 12:14:43 Hall again.

THE COURT: Again, have you given Mr. Hall a copy of the written plea offer?

MR. KUNKLE: I gave him a copy of the first one, Your Honor. He later denied that I had. With respect to the second 12:14:56 one, I again attempted to give him one and I would like to be heard ex parte on that.

THE COURT: Certainly.

MR. KUNKLE: I think sufficient for now, Your Honor, if the Court would just -- we could take it up in a few minutes 12:15:12 without the government being here. I think Mr. Hall is sitting here. I know he's an intelligent man. I know he heard what Ms. Jennis just said. In fact, what Ms. Jennis was relating about the plea agreement, I think, is critical. And I will tell you, and I would make this avowal and representation to 12:15:31

the Court, I have communicated along those same lines if not further and more profoundly to Mr. Hall the plea offer.

THE COURT: All right. If there's nothing else, Ms. Jennis, I think I would like you to remain outside. I don't know if we'll need you. Hard to say exactly what will happen. 12:15:50

MS. JENNIS: Thank you, Your Honor.

THE COURT: So we'll excuse the government at this time.

MR. KUNKLE: I think we need to have the spectators out. 12:16:12

THE COURT: Let me advise those people in the Court watching, we have a matter to take up. We call it ex parte. It means others are not present. Certain matters that have to be discussed that way. I'm going to ask the court watchers, thank you for your presence. We appreciate the public's 12:16:25 interest in the proceedings of the court. Because this matter does have to be sealed, I will ask you to step out. Thank you.

(Open court proceeding concluded at 12:16 p.m.)

C E R T I F I C A T E

I, LAURIE A. ADAMS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 8th day of September, 2015.

s/Laurie A. Adams
_______________________________
Laurie A. Adams, RMR, CRR